**STILLWATER INDUSTRIAL FOUNDATION, INC., a corporation, and the City of Stillwater, Oklahoma, a Municipal Corporation, Appellees,**

**v.**

**The STATE of Oklahoma ex rel. the BOARD OF REGENTS FOR the OKLAHOMA AGRICULTURAL AND MECHANICAL COLLEGES, Appellant.**

**No. 47040.**

Supreme Court of Oklahoma.

Sept. 23, 1975.

Fitzgerald, Houston & Worthington by Donald L. Worthington, Stillwater, for appellees.

E. Moses Frye, Charles E. Campbell, Stillwater, and Larry Derryberry, Atty.

Gen. of Oklahoma, and Jerry Weis, Asst. Atty. Gen., for appellant.

DAVISON, Justice.

This action was commenced in the District Court of Payne County, Oklahoma, on March 7, 1973, by the Stillwater Industrial Foundation, Inc., Appellee, hereinafter referred to as Plaintiff or Industrial Foundation, against the State of Oklahoma, ex rel. The Board of Regents for the Oklahoma Agricultural and Mechanical Colleges, hereinafter referred to as Board of Regents or University, and The City of Stillwater, hereinafter designated as City, as Defendants.

Plaintiff's suit was for the purpose of quieting its title to approximately 52.54 acres of land located adjacent to the present Municipal Airport to the City of Stillwater.

The Defendant, Board of Regents, filed its Answer and Counterclaim alleging that it had the right to re-entry under its deed to City for conditions broken and prayed that title to the property be quieted in it.

Judgment was rendered in favor of Plaintiff. The City was satisfied with the judgment and appears here as Appellee. Only the Board of Regents has appealed.

The Plaintiff is a nonprofit organization, and only organized for the purpose of developing and attracting new industry to the City of Stillwater for the mutual benefit of the City, the Board of Regents, the citizenship of that vicinity and surrounding areas. The record indicates that Plaintiff is operated as a mutual civic organization with the Officers, Trustees and the attorney donating their time without pay. That the Board of Regents had at all times been represented by various Trustees of Plaintiff organization.

In 1929 the City purchased the lands involved herein for a substantial sum of money ($13,000.00).

On May 5, 1941, City conveyed the involved and other land by deed to The Board of Regents for one dollar and other consideration, with a Stipulation in the deed as follows: "Second Party agrees to use the above described land for a public airport."

Prior to December 16, 1963, Plaintiff did not own an industrial tract, but just prior thereto Plaintiff and the Board of Regents were contacted by an industrial corporation from Wichita, Kansas, seeking an industrial site near the Stillwater Airport for the purpose of installing a plant to manufacture air parts and castings. At that time the involved land was in the Municipal Airport pattern and its release therefrom was obtained from the Federal Aeronautics Administration.

The evidence disclosed that the Plaintiff and the Board of Regents decided a conveyance of a portion of the involved land to the Wichita organization would be very beneficial to the University, the City and the Plaintiff. That at a meeting between the representatives of all of the parties herein, it was decided that the best way to give good title to the proposed builder would be for the Board of Regents to deed the land back to the City to merge the condition placed in the deed above referred to from the City to the Board of Regents which required the land to be used as a public airport.

The evidence disclosed that pursuant to the above understanding the Board of Regents, on December 6, 1963, executed its Quit Claim Deed back to the City covering the involved premises for a recited consideration of Ten Dollars ($10.00) and other valuable consideration which referred to Exhibit "A" attached to said deed which provided as follows:

"It is specifically agreed that the consideration for the execution of this document also includes the following factors:

"1. The construction of the new facility planned on this tract of land will offer to Oklahoma State University many research contracts in the future.

"2. The construction of the facility and its ultimate operation will bring to this

community an expected total of 100 new families.

"3. The construction of the proposed facility on this site will be the first of several industries surrounding the campus of Oklahoma State University which will be available for research contracts to University personnel.

"4. The construction of this facility will lend to the support of the municipal airport due to the increased air traffic at the airport."

On December 16, 1963, City executed its Quit Claim Deed to the land involved in favor of Plaintiff, subject to the same provisions as mentioned in the last referred to deed from the Board of Regents to City.

It appears from the evidence that the sale to the Wichita organization failed to materialize when a bond issue proposed by the City pertaining to the involved land failed to pass. There was testimony to the effect that the conditions contained in the deed from the Regents to City was for the purpose of obtaining the help of the personnel and friends of the college to help in the passage of the bond issue.

The evidence further discloses that Plaintiff, through its personal representatives, had shown the lands involved to more than one hundred industrial prospects after the deal with the Wichita organization failed to materialize. That in 1973 Plaintiff had two, for sure, and another good possibility prospect to construct industrial facilities on the involved acreage.

Other evidence disclosed that in 1973, through the efforts of Plaintiff, an industrial plant was going to locate on the subject land for the purpose of making electronic equipment but the industrial prospect was informed, by the Board of Regents, through their attorney that the Board claimed ownership of the land and the prospect declined to be in a lawsuit and the deal collapsed. This action by the Industrial Foundation followed.

On January 3, 1973 the Industrial Foundation conveyed back to the City 3.12 acres of the lands involved herein. The consideration shown in said deed was Ten Dollars ($10.00) and other good and valuable consideration. It was stipulated by all the parties that this deed was executed for the purpose of the City increasing the hangar capacity at the Municipal Airport and this had been approved by the F.A.A.

■ It is conceded by all parties that this is a case of equitable cognizance and the law governing such cases is stated in the case of *Anglin v. Edwards and Gauntt Oil Co.*, Okl., 418 P.2d 647, as follows:

"It is a long established rule of law in an equitable action that there is a presumption in favor of the findings of the trial court, and where such findings of the trial court are not clearly against the weight of the evidence, the judgment will be affirmed."

Many cases have followed this reasoning.

Also in the case of *Thompson v. Smith,* Okl., 420 P.2d 526, this court stated:

"Where evidence in case of equitable cognizance is conflicting, trial court's finding thereon will not be disturbed on appeal unless clearly against the weight thereof. . . . The determination of the credibility of witnesses and the effect and weight to be given to conflicting or inconsistent testimony are matters peculiarly within the province of the trier of fact."

The question to be decided is whether findings of the trial court are against the clear weight of the evidence.

■ Title 15 O.S.1971, Secs. 114 & 115, provide that written instrument is presumed to be supported by a valuable consideration and the burden of rebutting this presumption rests upon the party asserting invalidity of the instrument. These sections apply to all written instruments, including deeds.

The essential findings of the trial court are as follows:

"The court finds from the evidence that the City acquired the land from two separate properties in 1929, and paid a valuable consideration to the individual owners that conveyed the land to the City, and that thereafter all transactions involved transfers between the plaintiff and the two defendants here, who did not contemplate their consideration as is contemplated between individuals dealing at arm's length." * * *.

The Court further found that these other deeds were just used to accomplish the purposes of the industrial program and efforts were continuously made to accomplish that purpose from the date of the deed from the Board of Regents to City until the time this action was filed.

The Board of Regents raised two questions for reverter or re-entry. First, that there was no consideration for the deed to City, and, secondly, that there was a breach of the conditions or recitations shown in the Exhibit "A" and that the lapse of time from the delivery of said deed to the City until the time this action was filed constituted an abandonment.

██ As to the question of consideration it will be noted that the granting clause of the deed grants the property without any reservations, without any stipulation of reverter or forfeiture. It appears that the consideration for this deed was the same consideration that had passed in the 1941 deed from the University to the City, the consideration being the parties working together for the benefit of the City, the University and the community in general.

It also appears that on March 4, 1949, the City, as Lessor, leased to the University for a valuable consideration the Municipal Airport in which the University was to make certain improvement on said property, said lease to run for a period of twenty-five years, and under the terms thereof the lease was "non-cancellable for any cause, except for a breach of its terms."

The granting clause of the deed from the Board of Regents to City, dated December 6, 1963, contained the following language:

"The lease executed on March 4, 1949, for a term of 25 years between the City of Stillwater, Oklahoma, a municipal corporation, as Lessor, and the Board of Regents of the Oklahoma Agricultural and Mechanical Colleges, as Lessee, is specifically cancelled for that tract of land described in this deed. Any other lease agreement existing at the present time between the parties and covering the tract of land herein is also cancelled."

The wording of the lease and contents of the deed suggests that the equitable title to the involved property was recognized to be in the City and also the University was released from the terms of the lease. This also created a consideration for the deed to City.

██ As to the alleged breaches of the conditions contained in the four items listed in the deed from the Board to City they do not meet the requirements under the facts of this case for a reversion or cancellation.

Title 16 O.S.1971, § 29, (Revised Laws of 1910) provides:

"Every estate in land which shall be granted, conveyed or demised by deed or will shall be deemed an estate in fee simple and of inheritance, *unless limited by express words*." (Emphasis added)

"The mere expression of the purpose for which the property is to be used will not of itself suffice to limit the estate conveyed. The strong presumption against the forfeiture or divestiture requires that limiting language be unequivocally clear." *The Choctaw and Chickasaw Nations v. Board of County Commissioners*, 10 Cir., 361 F.2d 932.

In *Palmer v. Campbell*, Okl., 333 P.2d 957, the first syllabus reads, as follows:

"A deed of conveyance which contains no apt words to indicate there was an in-

tent on the part of the grantor to reserve unto himself any interest in said property, must be construed to convey to grantee all of the interest vested in grantor at the time of the execution of deed."

Also, see *Mickleson v. Gypsy Oil Co., et al.*, 110 Okl. 117, 238 P. 194.

 Even if the language of the so-called conditions *contained* in Exhibit "A" of the deed from the University was sufficient to create a right of reverter or re-entry, such conditions were waived under the facts of this case. Here the Plaintiff had from the time it had received the deed from the City in 1963, continuously endeavored to find some industrial company to locate on the acreage and had shown the property to many and various prospects over the years. The Board knew, or should have known, the efforts the Plaintiff had put forth in locating industrial prospects to locate on the property. This is true because at all times different officials of the University were Trustees of the Plaintiff organization. Trustees were elected each year, three of them for three year terms.

In the case of *Stewart v. Colvin et al.*, 202 Okl. 380, 214 P.2d 229, this Court said:

"A condition subsequent contained in a deed may be waived or forfeiture saved, not only by express agreement, but also by acts showing an intention to continue the estate in the grantee, or to voluntarily forego the benefits of the condition, especially where the grantor's declarations, conduct, or failure to act, when he ought to act, have been at variance or inconsistent with his right to enforce a forfeiture, or have so continued for a long period of time."

Under the facts it must be determined that all deeds involved were executed by the parties for the sole and mutual reason of benefitting the City, the University and the community at large.

There is no disagreement between City and Plaintiff.

 The Board raises for the first time in its brief the question of the deed from the University to City being without consideration in violation of Article 10, § 15, of the Oklahoma Constitution. This question was not raised by the pleadings, nor in its Petition in Error, and ordinarily would not be considered for that reason. However, we have heretofore discussed this contention in the foregoing opinion.

We have weighed the evidence and conclude the judgment of the trial court is not against the clear weight of the evidence.

Judgment affirmed.

All Justices concur.