[No. B141017. Second Dist., Div. Two. Apr. 23, 2001.]

PINK DOT, INC., Plaintiff and Appellant, v.
TELEPORT COMMUNICATIONS GROUP, Defendant and Respondent.

**COUNSEL**

Jenkens & Gilchrist, Bruce R. Greene, Glenn J. Plattner and Marc A. Seligman for Plaintiff and Appellant.

Gustafson & Goostrey, James D. Gustafson and Lena J. Marderosian for Defendant and Respondent.

## OPINION

**BOREN, P. J.**—Appellant Pink Dot, Inc. (Pink Dot), a grocery delivery service which relied heavily on customers' telephone orders, sued respondent Teleport Communications Group (Teleport), alleging that when negotiating for a centralized telephone system Teleport falsely represented its reliability and falsely claimed the ability to implement Caller ID. Pink Dot further complained that after it disputed a bill and sought a new telephone service provider, Teleport retaliated by intentionally discontinuing its telephone numbers without a forwarding number and by informing all callers that Pink Dot's number had been disconnected. ██ ██ We reverse the judgment in favor of Teleport and permit the matter to proceed to trial, since the tariff filed with the California Public Utilities Commission (PUC) allows limited recovery for any gross negligence by Teleport and cannot restrict liability for fraud and intentional misconduct.[1]

### FACTUAL AND PROCEDURAL SUMMARY

In late 1995, Pink Dot negotiated with Teleport, a public utility regulated by the PUC, to install and service a centralized telephone system. One of the important features Pink Dot required in its telephone system was Caller ID. During contract negotiations Teleport represented to Pink Dot that its service was as reliable as Pacific Bell's service, and that its service had an unsurpassed reliability of 99.99 percent uptime. According to Pink Dot, Teleport also asserted that its service could include Caller ID, which it would implement for Pink Dot. Based upon these representations Pink Dot contracted with Teleport for the installation and service of a centralized telephone system.

Pink Dot alleges that from approximately September of 1996 through April of 1997 Teleport breached its agreement. Specifically, Teleport's system was not capable of installing Caller ID during 1996. Teleport lacked the ability to install Caller ID until the second quarter of 1997, when signaling problems in the networks of both Teleport and Pacific Bell were corrected. As a Teleport representative acknowledged during a deposition, "Because we couldn't install it, we should not have been offering it to our customers at all. I mean, we can't offer a feature that we're not able to do."

---

[1]A tariff filed with the PUC consists of the schedules showing, inter alia, all rates and charges and all rules, contracts, privileges, and facilities that in any manner affect rates or service. (Pub. Util. Code, § 489, subd. (a); unless otherwise indicated, all further statutory references are to the Public Utilities Code). The tariff, with any limitations of liability specified therein, is the document that governs the rights and liabilities between a public utility, such as Teleport, and its customers. (*Trammell v. Western Union Tel. Co.* (1976) 57 Cal.App.3d 538, 548-553 [129 Cal.Rptr. 361].)

Teleport also acknowledged that its representative asserted to Pink Dot during contract negotiations that, as indicated in its brochures, Teleport's service had an unsurpassed reliability of 99.99 percent uptime. In fact, Teleport's promotional brochure specifically emphasized: "[W]e're up and running smoothly more than 99.99% of the time, making sure your vital communications are doing the same. And we've employed the latest state-of-the-art technology which enables us to provide the alternative routing, 24-hour performance monitoring, and disaster-avoidance planning your business requires. Result, we're able to operate so efficiently, our clients experience less than one errored bit in 100,000,000,000 (the equivalent to one misspelled word in War and Peace). Considering that, is it any wonder that leading financial institutions, stock exchanges, medical centers, law firms, network broadcasters, advertising agencies and even (yes) long-distance carriers depend on [Teleport's] superior local service for their vital local communications requirements."

Despite the impression that Teleport's customers would have 99.99 percent uptime, Teleport defined "uptime" as limited to its own network with no regard to the actual services received by the customers. Teleport's project manager did not consider "anything that tags the customer premise equipment [as] part of our network," and thus excluded the outages suffered by Pink Dot from the percentage of uptime it guaranteed. Thus, the more than 70 hours of outages experienced by Pink Dot were not deemed by Teleport as downtime under Teleport's interpretation of its representations. This conclusion, however, was contrary to the understanding of Teleport's own sales representative, who had assured Pink Dot of Teleport's reliability and who believed that the claim of minimal downtime included any outage time suffered by the customer.

Pink Dot ultimately informed Teleport that it was disputing its bills, terminating its service with Teleport, and switching to Pacific Bell. Teleport did not provide any discount or credit to Pink Dot for any of the service problems. As Teleport threatened to do, when Pink Dot did not pay the disputed bills, Teleport refused to refer callers to Pink Dot's new numbers but rather placed a disconnect message on Pink Dot's old numbers. Responsible personnel at Teleport were specifically aware that placing the disconnect message would damage Pink Dot's business. Pink Dot, in fact, lost business and incurred increased advertising expenses.

Pink Dot thereafter sued Teleport. Pink Dot's second amended complaint alleged breach of contract, gross negligence (which Pink Dot acknowledged was limited by Teleport's tariff to recovery of $10,000), intentional misrepresentation, violation of section 2106 (which by its terms permits actual and

exemplary damages for willful violations of any state law or any order or decision of the PUC), intentional interference with economic relations, and unfair competition. Teleport moved for summary judgment or, alternatively, summary adjudication on the issue of whether Pink Dot's damages were limited by the tariff. Teleport argued that all of Pink Dot's causes of action fell within Teleport's tariff, and that the trial court lacked jurisdiction based on the tariff. It urged alternatively that the trial court should limit liability for damages to a credit for service interruptions and to $10,000 for any gross negligence, though it also argued no gross negligence existed from the mere failure to provide the type and quality of services represented in the tariff.

The trial court (Judge Julius M. Title) denied Teleport's motion for summary judgment. It specifically found that the "[t]ariff does not address intentional tort claims regarding matters not contained in the published tariffs and in such matters the Court does have jurisdiction to consider damage claims." However, the trial court granted summary adjudication on the negligence cause of action.

Pink Dot also filed a motion for summary adjudication, which was heard the same time as Teleport's motion. Pink Dot urged that undisputed evidence established that Teleport breached the contract by failing to install Caller ID and by permitting multiple service interruptions. It further urged that Teleport committed fraud when it represented it could install Caller ID. The court denied the motion for summary adjudication, finding that factual disputes existed.

Before a jury was empanelled or any evidence was presented, Teleport filed a motion in limine again urging that Pink Dot's damages fell within the provisions of Teleport's tariff and that Pink Dot's claims for damages were therefore barred. The trial court (Judge James A. Albracht) accepted the argument that the tariff limitations applied to Pink Dot's fraud and other intentional tort claims. The court viewed the "intentional misrepresentation claims [as] really just another way of articulating claims for bad service, albeit having moved back earlier in the time line." It thus granted Teleport's motion in limine and ruled that Pink Dot could put on all of its evidence in support of its claims of fraud, intentional interference, and violation of section 2106, but that even if it prevailed it would be limited to a credit for service interruptions and no money damages.

Because these rulings effectively left Pink Dot without any remedy, the court and the parties agreed, inter alia, that Pink Dot would waive its right to seek a trial to collect the credit for service interruptions, and that Pink Dot would dismiss its remaining unfair competition claim. The court then entered judgment against Pink Dot and in favor of Teleport.

## DISCUSSION

*The standard of review*

Both the trial court's (1) rulings on summary adjudication of issues as to negligence, breach of contract and fraud, and (2) ruling restricting damages in the fraud and intentional torts claims to a credit for service interruptions, which resulted in judgment against Pink Dot, were based on the legal interpretation of the scope and effect of Teleport's tariff. **(2)** Because resolution of the appeal hinges on questions of law, we apply the de novo standard of review, exercising our independent judgment as to the legal effect of the facts and determining anew questions of law. (*Buss v. Superior Court* (1997) 16 Cal.4th 35, 60 [65 Cal.Rptr.2d 366, 939 P.2d 766]; *Ghirardo v. Antonioli* (1994) 8 Cal.4th 791, 799 [35 Cal.Rptr.2d 418, 883 P.2d 960].)

*The PUC's rules and Teleport's tariff*

"In 1967 the [PUC] undertook, on its own motion, to investigate all tariff provisions limiting the liability of telephone companies. In its Decision No. 77406, filed June 30, 1970 (*Re Telephone Corporations*, 71 Cal. P.U.C. 229), the commission adopted findings and announced an order requiring each telephone company to adopt, as a part of its tariff, new limitation of liability rules. In substance the new rules were to (1) provide expressly for liability for wilful misconduct, fraudulent conduct or violations of law; (2) allow liability for gross negligence to a limit of $10,000 (except that the limitation would be $2,000 for companies having annual gross revenue of a million dollars or less); (3) limit liability for other errors or defects to a credit not exceeding the charges for the period affected. [¶] . . . The commission declared that the report of its examiner had correctly found 'that the present limitation of liability rules do not apply to situations involving wilful misconduct, fraudulent conduct or violations of law,' and that these exceptions should [henceforth] be stated specifically in future tariffs." (*Stern v. General Telephone Co.* (1975) 50 Cal.App.3d 538, 541-542 [123 Cal.Rptr. 373].)

The PUC expressly stated that "The [public utilities] candidly concede that the rules which limit their liability do not apply to situations which involve willful misconduct, fraudulent conduct or violations of law. This is correct. (Civil Code § 1668; [citations].)" (*Re Telephone Corporations, supra*, 71 Cal.P.U.C. at p. 237.) Indeed, pursuant to Civil Code section 1668, "All contracts which have for their object, directly or indirectly, to exempt anyone from responsibility for his own fraud, or willful injury to the person

or property of another, or violation of law, whether willful or negligent, are against the public policy of the law."

We acknowledge the subsequent observation in *Waters v. Pacific Telephone Co.* (1974) 12 Cal.3d 1, 6, footnote 5 [114 Cal.Rptr. 753, 523 P.2d 1161] (*Waters*), that public policy considerations, such as that in the proscription of Civil Code section 1668, are not necessarily applicable to the provisions of a tariff. As noted in *Waters*, the rate specified in the tariff may have been computed with the understanding that the exculpatory clause in the tariff would relieve the utility of the expense of insuring itself against liability. In *Waters*, however, both the utility's actions complained of and the tariff filed predated the PUC's 1970 opinion in *Re Telephone Corporations*, which required exposure to liability for any willful misconduct, fraud or violations of law by the utility. After the effective date of *Re Telephone Corporations*, as here, utilities should be responsible for taking into account the economic implications of liability for willful misconduct, fraud or violations of law.

In the present case, as it was required to do by section 489, Teleport filed a tariff with the PUC. Unlike the tariff found in other cases, Teleport's tariff was inexplicably silent as to the required liability for any willful misconduct, fraud or violations of law. (Cf., e.g., *Los Angeles Cellular Telephone Co. v. Superior Court* (1998) 65 Cal.App.4th 1013, 1016-1017, fn. 2 [76 Cal.Rptr.2d 894]; *Colich & Sons v. Pacific Bell* (1988) 198 Cal.App.3d 1225, 1232-1233, fn. 4 [244 Cal.Rptr. 714].) But the tariff did contain clauses intended to limit Teleport's liability to its customers for damages caused by its conduct. The tariff provided, in pertinent part, as follows: "The liability of the Company for damages arising out of the furnishing of these services, including but not limited to mistakes, omissions, interruptions, delays, or errors, or other defects, representations, or use of these services or arising out of the failure to furnish the service, whether caused by acts of commission or omission, shall be limited to the extension of allowances for interruption. The extension of such allowances for interruption shall be the sole remedy of the Customer . . . and the sole liability of the Company. In the event an error or omission is caused by the gross negligence of the Company, the liability of the Company shall be limited to and in no event exceed the sum of $10,000."

■ We find that Teleport cannot eliminate its liability for willful misconduct, fraud or violations of law by merely omitting the acknowledgment of such liability from its tariff. Failure to state such liability in its tariff violates the specific mandate in the PUC's opinion in *Re Telephone Corporations*, which ordered that those exceptions to limitations of liability be stated in telephone company tariffs. (See *Stern v. General Telephone Co.*,

*supra,* 50 Cal.App.3d at p. 543.) If Teleport could so simply opt out of liability for intentional misconduct or fraud, what could prevent a utility from filing a tariff with terms completely eliminating its liability for gross negligence? And why have limited liability for gross negligence as stated in Teleport's tariff, but preclude liability for more aggravated claims involving intentional misconduct or fraud? The failure, intentional or otherwise, to file a properly worded tariff thus cannot insulate Teleport from liability for intentional misconduct or fraud in dealing with its customers.

Teleport's potential liability for misrepresentation and fraud is particularly appropriate as to the Caller ID issue. Teleport acknowledges that Caller ID was not a service included in its tariff in 1997. To the extent Caller ID was not an included service when Teleport offered to install it in 1995 or 1996, it is difficult to envision how Teleport's tariff could exculpate it from liability for problems relating to a service it did not furnish. And since Teleport could not then as a matter of law have furnished a service not in its tariff, fraudulently promising to provide the Caller ID service would be all the more egregious.

Moreover, Teleport's suggestion is unpersuasive that the vague language in its tariff precluding liability for damages "including but not limited to . . . representations" could be construed to preclude liability for intentional misconduct and fraud. Even if such broad and unfocused exculpatory language in Teleport's tariff could be so construed, "The rule has been stated many times that if there is an ambiguity in a tariff any doubt in its interpretation is to be resolved in favor of the [nondrafter and against the utility]. (Civ. Code, § 1654.)" (*Transmix Corp. v. Southern Pac. Co.* (1960) 187 Cal.App.2d 257, 267 [9 Cal.Rptr. 714]; see *Masonite Corp. v. Pacific Gas & Electric Co.* (1976) 65 Cal.App.3d 1, 8-9 [135 Cal.Rptr. 170].)

Most significantly, however, attempting to preclude such liability in a tariff provision would be contrary to the PUC's mandate and prevailing law. "As the [PUC] explain[ed], it is clear that ordinary rules permitting the limitation of liability do not apply to situations involving fraud or wilful misconduct." (*Empire West v. Southern California Gas Co.* (1974) 12 Cal.3d 805, 811, fn. 4 [117 Cal.Rptr. 423, 528 P.2d 31] (*Empire West*).)

No California case holds that the terms of a PUC tariff can insulate a public utility from its intentionally tortious conduct. Accordingly, the terms of Teleport's tariff could not have precluded liability for willful misconduct, fraud or violations of law (or for gross negligence up to $10,000 in damages).

*The filed rate doctrine*

■ Teleport also focuses on the federal filed rate doctrine and various federal cases (e.g., *American Telephone & Telegraph Co. v. Central Office Telephone, Inc.* (1998) 524 U.S. 214 [118 S.Ct. 1956, 141 L.Ed.2d 222]; *Wegoland Ltd. v. NYNEX Corp.* (2d Cir. 1994) 27 F.3d 17, 21) to support its notion that a tariff can preclude state statutory or common law claims, even claims for fraud. According to Teleport, the federal filed rate doctrine does more than bar a claim alleging entitlement to services on terms contrary to the terms specified in a filed tariff. Teleport essentially urges that any claim alleging inadequate service, even one based on fraudulent representations or false advertising used to induce a contract, necessarily attacks the reasonableness of tariff rates, which is prohibited by the completely binding nature of a tariff. Even accepting arguendo Teleport's restrictive view of the federal filed rate doctrine, its reliance on the doctrine is unavailing here.

To the degree Teleport seeks to apply directly the federal filed rate doctrine, it may not do so in the present case because no federal tariff is implicated. Teleport filed its tariff with the California PUC and not with any federal regulatory entity. Since this is a state case with no tariff filed with any federal regulatory agency, the direct application of the federal filed rate doctrine is inappropriate. (See *Knevelbaard Dairies v. Kraft Foods, Inc.* (9th Cir. 2000) 232 F.3d 979, 993 (*Knevelbaard*).)

Even if Teleport reasons by analogy to the federal filed rate doctrine and thereby urges the same restrictive notions of liability are inherent in the state filed rate doctrine, Teleport is mistaken. There is no parallel state filed rate doctrine that would operate to bar *all* state statutory or common law claims.

Certainly, a state-filed tariff "when so published and filed, ha[s] the force and effect of a statute." (*Dyke Water Co. v. Public Utilities Com.* (1961) 56 Cal.2d 105, 123 [14 Cal.Rptr. 310, 363 P.2d 326].) Also, such tariffs are " 'law' " and "are binding on the public generally." (*Trammell v. Western Union Tel. Co., supra,* 57 Cal.App.3d at pp. 550, 551.)

Nonetheless, all state law causes of action are not necessarily precluded. In California, there are limits to the filed rate doctrine, as is apparent in both the PUC's opinion in *Re Telephone Corporations, supra,* 71 Cal. P.U.C. 229, as previously discussed, and in various cases. In *Empire West, supra,* 12 Cal.3d 805, for example, the court held that a public utility could be liable for fraud when it falsely claimed to have the expertise to prepare a cost analysis of the operating cost of a central gas heating and cooling system requested by the plaintiff. The plaintiff in *Empire West* was induced to enter the contract based on a false representation, just as Pink Dot alleges Teleport

falsely represented its ability to install Caller ID and its expertise in providing telephone services in the Los Angeles market.

More recently, in *Knevelbaard, supra,* 232 F.3d 979, an antitrust case originally brought in state court but removed on diversity grounds to federal court, the court examined California authority to determine whether the state would apply the federal filed rate doctrine to exclude state claims. It found "there is no reason to think that California would apply the filed rate doctrine that it has so clearly rejected," and that "California has held, in contrast to federal law, that no filed rate doctrine exists as a bar." (*Id.* at pp. 992, 993.) The court in *Knevelbaard* focused on *Cellular Plus, Inc. v. Superior Court* (1993) 14 Cal.App.4th 1224 [18 Cal.Rptr.2d 308], where the telephone service providers contended that the filed rate doctrine shielded them because the prices they charged for services, prices claimed by plaintiffs to have resulted from a horizontal price-fixing conspiracy, had been approved by the PUC. The state court rejected the telephone service providers' contention. It found "no compelling underlying logic or policy reasons for denying a Cartwright Act [state antitrust] cause of action for treble damages to a person injured by reason of a price fixing conspiracy, even if the fixed prices had been approved as reasonable by a regulatory agency." (*Id.* at pp. 1241-1242.)

Accordingly, there is no merit to Teleport's arguments regarding the filed rate doctrine.

*The superior court had subject matter jurisdiction to award damages*

■ In recognition of the PUC's broad authority to regulate the activities of the state's public utilities, section 1759 provides that California superior courts do not have jurisdiction to interfere with PUC actions.[2] According to Teleport, all of Pink Dot's claims implicate the nature and quality of Teleport's services, which are matters regulated by the PUC. Teleport urges that Pink Dot essentially seeks to enlarge Teleport's tariff duties by claiming additional or better services beyond those provided under the tariff. Teleport thus suggests that since the trial court's consideration of damage claims beyond the tariff limitations would interfere with the PUC's supervisory and regulatory powers, which interference is proscribed by section 1759, the trial court correctly found it lacked jurisdiction to consider claims in excess of the tariff limitations.

---

[2]Section 1759, subdivision (a) provides as follows: "No court of this state, except the Supreme Court and the court of appeal, to the extent specified in this article, shall have jurisdiction to review, reverse, correct, or annul any order or decision of the commission or to suspend or delay the execution or operation thereof, or to enjoin, restrain, or interfere with the commission in the performance of its official duties, as provided by law and the rules of court."

Pink Dot, however, did not seek to hinder or interfere with any policy of the PUC. The trial court should have permitted Pink Dot's claims to proceed to trial under the jurisdiction granted by section 2106, which permits an action against a public utility which engages in an activity "prohibited or declared unlawful" and allows exemplary damages where the activity is "willful."[3] (See *Masonite Corp. v. Pacific Gas & Electric Co., supra,* 65 Cal.App.3d at pp. 7-8.)

The Supreme Court in *Empire West, supra,* 12 Cal.3d 805, rejected an argument similar to that now raised by Teleport. In rejecting the argument that allowing a fraud claim would create a preferential rate for the customer, the Supreme Court in *Empire West* observed: "Although this court has recognized that damage suits brought against a utility under section 2106 must not be used as a device to avoid or interfere with established regulations or practices of the Public Utilities Commission [citing *Waters, supra,* 12 Cal.3d 1], the commission has expressed no policy against suits of the nature involved herein. To the contrary, a recent commission decision [*Re Telephone Corporations, supra,* 71 Cal. P.U.C. 229] indicates that fraudulent statements made by a utility to a prospective customer to induce his business are properly actionable in a court of law." (*Empire West, supra,* 12 Cal.3d at p. 811; see also *Masonite Corp. v. Pacific Gas & Electric Co., supra,* 65 Cal.App.3d at pp. 7-8.) Pink Dot's claims of fraud in the inducement relating to Caller ID and the false representations regarding Teleport's experience and reliability thus should have gone to a jury.

The California Supreme Court also has specifically addressed the apparent conflict between sections 1759 and 2106. It resolved the potential conflict between sections 1759 and 2106 by holding that "the latter section must be construed as limited to those situations in which an award of damages would not hinder or frustrate the commission's declared supervisory and regulatory policies." (*Waters, supra,* 12 Cal.3d at p. 4.) Therefore, Pink Dot's claims which do not "hinder or frustrate" (*ibid.*) the PUC's supervisory or regulatory policies are permitted under section 2106.

---

[3]Section 2106 provides as follows: "Any public utility which does, causes to be done, or permits any act, matter, or thing prohibited or declared unlawful, or which omits to do any act, matter, or thing required to be done, either by the Constitution, any law of this State, or any order or decision of the commission, shall be liable to the persons or corporations affected thereby for all loss, damages, or injury caused thereby or resulting therefrom. If the court finds that the act or omission was wilful, it may, in addition to the actual damages, award exemplary damages. An action to recover for such loss, damage, or injury may be brought in any court of competent jurisdiction by any corporation or person. [¶] No recovery as provided in this section shall in any manner affect a recovery by the State of the penalties provided in this part or the exercise by the commission of its power to punish for contempt."

*Conclusion*

Pink Dot's causes of action alleging Teleport's violation of section 2106, Teleport's intentional misrepresentation and fraud in the inducement regarding Caller ID installation and Teleport's purported expertise and reliability, Teleport's intentional interference with economic relations by installing a disconnect notice rather than a forwarding number, and Teleport's gross negligence regarding significant telephone downtime and the Caller ID issue could not "hinder or frustrate" (*Waters, supra,* 12 Cal.3d at p. 4) the PUC's supervisory or regulatory policies. Such claims are thus permitted under section 2106 and are not otherwise precluded.

Pink Dot's breach of contract claim regarding excessive downtime and the absence of Caller ID, however, is limited to a credit for service interruption. Recovery is so restricted because the failure to furnish services is covered by the limited liability provision in Teleport's tariff. But to the extent Caller ID was not a service included in the tariff, no credit for service interruption would be available. The trial court thus properly denied Pink Dot's summary adjudication motion as to the breach of contract claim.

Summary adjudication was also properly denied as to Pink Dot's claim of Teleport's alleged fraud in representing it could install Caller ID. A factual dispute arguably exists not as to whether Teleport promised to provide such a feature, but whether it did so at a time and in a manner which fraudulently induced Pink Dot to contract for its services. The trial court thus properly denied Pink Dot's summary adjudication motion as to the claim of fraud in the inducement. Finally, contrary to Teleport's assertion, Pink Dot's claims of gross negligence and willful misconduct were adequately pled with sufficient specific facts.

DISPOSITION

The judgment is reversed. Pink Dot is entitled to costs on appeal.

Nott, J., and Doi Todd, J., concurred.