2002 OK 61

**SATELLITE SYSTEM, INC.,**
**Plaintiffs/Appellee,**

v.

**BIRCH TELECOM OF OKLAHOMA, INC., Defendant/Appellant.**

**No. 96,806.**

Supreme Court of Oklahoma.

July 2, 2002.

Michael Bickford, Fuller, Tubb, Pomeroy & Stokes, Oklahoma City, Oklahoma, Patrick J. Whalen, Spencer Fane Britt & Browne LLP, Kansas City, Missouri, for Appellant.

Terry J. Garrett, Kelly J. Walker, Garrett & Walker, LLP, Norman, Oklahoma, for the Appellee.

Nicole A. King, Cece L. Coleman, Assistant Attorneys General, Office of the Oklahoma Attorney General, Oklahoma City, Oklahoma, for the Amicus Curiae, the State of Oklahoma.

William R. Burkett, Rachel Lawrence, Andrea P. Johnson, Oklahoma Corporation Commission, Oklahoma City, Oklahoma, for the Amicus Curiae, the Oklahoma Corporation Commission.

HODGES, J.

## I. ISSUE

¶ 1 This matter is before this Court for review of a certified interlocutory order. The issues are: (1) whether Oklahoma has adopted a state filed tariff doctrine, also know as a filed rate doctrine, which would bar actions against a public utility that has filed tariffs with the Oklahoma Corporation Commission (Commission), and (2) whether the limitation-of-liability provision approved as part of the defendant's tariff acts to limit the defendant's liability for fraudulent acts to a prorated refund for the service. We find that the plaintiff's fraud claim is not barred by the filed tariff doctrine nor are the plaintiff's damages limited by the tariff's limitation-of-liability provision.

## II. FACTS

¶ 2 The alleged facts are as follows. The plaintiff, Satellite Systems, Inc. (SSI), is an Oklahoma corporation which uses telemarketing to sell its satellite systems mostly to customers in rural areas. It uses long distance calling in its telemarketing program. Initially, SSI had "local plus" service with Southwestern Bell Communications (SBC). Local plus service allowed SSI to make intrastate long distance calls for a flat monthly fee rather than on a cost-per-minute basis.

¶ 3 In April of 2001, representatives of Birch Telecom of Oklahoma, Inc. (Birch), an intrastate telecommunications carrier, contacted SSI and induced it to switch its telephone service to Birch. Birch represented that it could provide local plus service to SSI. After SSI changed its phone service to Birch, SSI immediately encountered problems when attempting to use local plus service. Thereafter, Birch informed SSI that it could not provide local plus service. SSI asserts in its

brief that when it attempted to revert to SBC, Birch refused to allow SBC access to the telephone lines. SSI alleges that it was damaged by Birch's fraudulent conduct.

¶ 4 SSI filed a petition claiming damages for breach of contract and for fraud. The district court dismissed the breach of contract claim but refused to dismiss the fraud claim. The district court certified the order for immediate review. This Court granted the petition for certiorari. At this Court's invitation, the Commission and the Attorney General of Oklahoma both filed briefs as *amicus curiae.*

## III. FEDERAL FILED TARIFF DOCTRINE

¶ 5 Birch argues that both the contract claim and the fraud claim should have been dismissed because they were barred under the filed tariff doctrine or, in the alternative, under its tariff's limitation-of-liability provision. First recognized in *Keogh v. Chicago & Northwestern Railway,*[1] the federal filed tariff doctrine bars claims involving rates and services, including state fraud claims, when the defendant has filed its tariff with a federal agency.[2] The federal filed tariff doctrine is an affirmative defense which recognizes a federal agency's authority to set reasonable rates.[3] The doctrine serves two purposes: (1) to prevent rate discrimination among customers, and (2) to preserve an agency's authority to set reasonable rates for utilities.[4] The federal doctrine has been criticized as no longer serving its original purpose.[5] It is under attack particularly with the current trend toward deregulation and competitive markets.[6]

## IV. STATE FILED TARIFF DOCTRINE

¶ 6 Because Birch is an intrastate telecommunications company required to file its tar-

1. 260 U.S. 156, 43 S.Ct. 47, 67 L.Ed. 183 (1922).

2. *Wegoland Ltd. v. NYNEX Corp.,* 27 F.3d 17, 20 (2nd Cir.1994).

3. *Arkansas Louisiana Gas Co. v. Hall,* 453 U.S. 571, 577, 101 S.Ct. 2925, 69 L.Ed.2d 856 (1981).

4. *Wegoland,* 27 F.3d at 19.

5. *Square D Co. v. Niagara Frontier Tariff Bureau, Inc.,* 760 F.2d 1347 (2nd Cir.1985), *aff'g* 476 U.S. 409, 106 S.Ct. 1922, 90 L.Ed.2d 413 (1986).

6. Rendi L. Mann–Stadt, Note, Limitation of Liability for Interruption of Service for Regulated Telephone Companies: An Outmoded Protection?, 1993 U. Ill. L.Rev. 629.

iffs with the Commission, the federal filed tariff doctrine is not controlling in this appeal.[7] Even so Oklahoma adheres to the same policies underlying the federal filed tariff doctrine: to prevent discriminatory rates and to vest an agency with authority to set reasonable rates.[8] Section 165:55-5-1 of the Commission's rules applies these statutory policy declarations and embodies a filed tariff doctrine by forbidding "deviation from the filed tariff ... without order of the Commission" and by providing "[the] filed tariff [is] binding upon the telecommunications service provider and the end-user as to the rates and charges for service and the terms and conditions of service." [9]

■ ¶ 7 Although we agree that these provisions reflect a policy supporting a state filed tariff doctrine, other policies undermine a comprehensive doctrine which would bar a state claim for common law fraud. Title 12, section 2 of the Oklahoma Statutes provides: "The common law, as modified by constitutional and statutory law, judicial decisions and the condition and wants of the people, shall remain in force in aid of the general statutes of Oklahoma...." Thus, "[t]he common law remains in force in this state, unless a statute explicitly provides to the contrary." [10] A legislative intention to abolish a common law right must be clearly and plainly expressed.[11] A presumption favors the preservation of common-law rights.[12] The Oklahoma legislature has not expressed an intent, either explicitly or implicitly, that the policies supporting a state rate tariff doctrine were intended to abolish a common law fraud claim. Even if a state filed tariff doctrine has been adopted in Oklahoma, it does not bar a common law fraud claim. This pronouncement is in accord with the *amicus curiae* briefs of the Commission and Oklahoma's Attorney General which advocate a limited state filed tariff rule which would not bar a common law fraud claim.

## V. TARIFF'S LIMITATION-OF-LIABILITY PROVISION

¶ 8 Birch attempts to utilize the limitation-of-liability provision to shield it from potential liability for the alleged fraudulent conduct. We do not agree that the limitation-of-liability provision filed as part of Birch's tariff protects Birch from liability for fraudulent conduct. The tariff provides:

> The liability of [Birch] for any claim or loss, expense or damage, due to any interruption, delay, error, omission, or defect in any service, facility, or transmission provided under this Tariff or any service order shall not exceed the amount of the credit allowance described in Section 2.6 herein. The extension of credit allowances as described in Section 2.6 shall be the sole remedy of Customer and sole liability of the Company for any interruption, delay, error, omission, or defect in any service, facility, or transmission provided under this Tariff or any service order. In no event will [Birch] be liable for any direct, indirect, consequential, incidental, exemplary, punitive, or special damages, or for any lost business, goodwill, income or profits, even if advised of the possibility of the same.

This tariff is consistent with the Commission general rule which limits liability to a prorated refund for service interruptions lasting more than 24 hours and within the control of the telecommunications service provider.[13]

¶ 9 Even though the limitation-of-liability provision does not explicitly address fraudulent conduct, the tariff limits the damages for which Birch may be liable. This provision

---

7. Okla. Stat. tit. 17, § 139.103 (2002); *see Pink Dot, Inc. v. Teleport Communications Group*, 89 Cal.App.4th 407, 107 Cal.Rptr.2d 392, 398 (2001).

8. Okla. Stat. tit. 17, §§ 139.102(24), 139.103 (2001); Okla. Admin. Code § 165:55-5-1; 47 U.S.C. § 203.

9. Okla. Admin. Code 165:55-5-1.

10. *Wagoner v. Bennett*, 1991 OK 70, 814 P.2d 476.

11. *Wright v. Grove Sun Newspaper Co., Inc.*, 1994 OK 37, ¶ 5, 873 P.2d 983, 987; *Hull v. Sun Refining and Marketing Co.*, 1989 OK 168, 789 P.2d 1272.

12. *Wright*, 1994 OK 37 at ¶ 5, 873 P.2d at 987.

13. Okla. Admin. Code 165:55-9-6.

purports to limit damages for the alleged fraudulent conduct to a credit allowance. As with all enforceable tariffs, this tariff was approved by the Commission. Because the local plus service was not a part of Birch's tariff, there was not a Commission approved rate for this service which could be prorated.

 ¶ 10 The Commission is vested with authority to guard the public's interest with regard to utility rates.[14] Commission rules, including tariffs, adopted pursuant to this grant of authority are legislative rules limited by the grant of authority.[15] Further, the tariff must be issued under the proper procedure and must be reasonable.[16] If these three requirements are met, the legislative rule, including a tariff, will have the force and effect of law.[17] Otherwise, the rule is not binding upon a court.[18]

 ¶ 11 Oklahoma has a strong legislative public policy against contracts which attempt "to exempt anyone from responsibility for his own fraud, or willful injury to the person or property of another." [19] Although this Court had not previously applied this policy against regulatory attempts to limit liability for fraudulent conduct, it was addressed in *Wheeler Stuckey, Inc. v. Southwestern Bell Tel. Co.*[20] Applying Oklahoma law, the court in *Wheeler Stuckey* stated:

"[T]he telephone company may, by contractual stipulation, or by general exchange tariff, rules and regulations applying to all customer's contracts, which are on file and approved by the Oklahoma Corporation Commission limit the amount of its liability for injuries resulting from omissions and mistakes ... so long as it does not seek immunity from gross negligence or willful misconduct." [21] If gross negligence and willful misconduct are not shielded by a provision limiting liability, it follows fraudulent conduct would not be shielded either.

¶ 12 Based on Oklahoma's public policy as stated in section 212 of title 15, attempts to limit liability for fraud either by tariff or by contract are unreasonable. Because Birch's tariff attempted to limit its liability for fraud, it was unreasonable, does not have the force of law, and is not binding.[22]

¶ 13 This holding is consistent with the majority of jurisdictions applying state law. Although divided, courts have generally upheld tariff liability limitations for ordinary negligence within a regulatory agency's authority to adopt reasonable rates for regulated services.[23] However, Courts overwhelmingly reject attempts to limit liability either by contract or by tariff for gross negligence, willful misconduct, and fraud.[24]

14. Okla. Const. Art. 9, § 18; Okla. Stat. tit. 17, § 152 (2002); *Public Service Co. v. State ex rel. Corp. Comm'n*, 1997 OK 145, ¶ 10, 948 P.2d 713, 717.

15. Okla. Const. art. 9, § 18; Okla. Stat. tit. 17, § 152 (2002); *Public Service Co.*, 1997 OK 145 at ¶ 10, 948 P.2d at 717; 1 Kenneth Culp Davis, Administrative Law Treatise § 5.03 at 299 (1st ed.1958) (hereinafter K.C. Davis); 1 Kenneth Culp Davis, Administrative Law Treatise § 6.3 at 233–34 (3rd ed.1994).

16. *Henry v. Corporation Comm'n*, 1990 OK 103, ¶ 3 n. 10, 825 P.2d 1262, 1270 n. 10 (Opala, J., concurring specially); K.C. Davis, *supra*, § 5.03 at 299. ·

17. *Henry*, 1990 OK 103 at ¶ 3 n. 10, 825 P.2d at 1270 n. 10; K.C. Davis, *supra*, § 5.03 at 299.

18. *See Henry*, 1990 OK 103 at ¶ 3 n. 10, 825 P.2d at 1270 n. 10; K.C. Davis, *supra*, § 5.03 at 299.

19. Okla. Stat. tit 15, § 212 (2002).

20. 279 F.Supp. 712 (W.D.Okla.1967).

21. *Id.* at 714.

22. *See Henry*, 1990 OK 103 at ¶ 13 n. 10, 825 P.2d at 1270 n. 10; K.C. Davis, *supra*, § 5.03 at 299.

23. *Bulbman, Inc. v. Nevada Bell*, 108 Nev. 105, 825 P.2d 588, 590 (Nev.1992); Kunin, Unilateral Tariff Exculpation in the Era of Competitive Telecommunications, 41 Cath U.L.R. 907, 915–16 n. 45 (1922).

24. *Holman v. Southwestern Bell Tel. Co.*, 358 F.Supp. 727, 728 (D.C.Kan.1973); *Robinson Ins. & Real Estate v. Southwestern Bell Tel. Co.*, 366 F.Supp. 307, 311 (W.D.Ark.1973); *Wheeler Stuckey Inc. v. Southwestern Bell Tel. Co.*, 279 F.Supp. 712, 714–15 (W.D.Okla.1967); *Sommer v. Mountain States Tel. & Tel. Co.*, 21 Ariz.App. 385, 519 P.2d 874, 876 (1974); *Pink Dot, 107 Cal.Rptr.2d at 398; *Southern Bell Tel. & Tel. Co. v. Invenchek, Inc.*, 130 Ga.App. 798, 204 S.E.2d 457 (Ga.Ct.App.1974); *Burdick v. Southwestern Bell Tel. Co.*, 9 Kan.App.2d 182, 675 P.2d 922, 925 (1984); *Danisco Ingredients United States, Inc. v. Kansas City Power & Light Co.*, 999

¶ 14 As discussed in *Waters v. Pacific Telephone Company*,[25] the premise behind judicial recognition of the validity of limitation-of-liability provisions is that public utilities are strictly regulated and the limits on liability are part of the regulating body's analysis when establishing reasonable rates. Recognition of technology has also been a consideration in the analysis of whether a tariff limiting liability is reasonable.[26] The Court in *Wilkinson v. New England Telephone & Telegraph Co.*[27] stated that "because of the complexities and intricacies of the modern telephone system in which" mechanical devices have substantially replaced the personal element, a provision limiting liability is not unreasonable. The court continued that a public utility should not be held liable for all possible failures.[28] The rationale justifying liability limits for ordinary negligence simply do not support liability limits for fraudulent conduct.

## VI. SSI'S FAILURE TO ADDRESS LIMITATION–OF–LIABILITY PROVISION IN TRIAL COURT

¶ 15 Birch asserts that SSI should not be allowed to address the issue of whether the tariff itself limits liability because SSI did not address the issue in its response to the motion to dismiss. We note that the cases cited by Birch in support of this assertion do not involve motions to dismiss.[29] Because Birch argued the tariff's limiting liability in its brief in chief, SSI was entitled to address the issue in its response brief. Further, a motion to dismiss for failure to state a claim must be denied unless the moving party shows that without a doubt the plaintiff can prove no set of facts in support of the claim for relief.[30] In the trial court, the burden was on Birch to show that there were no set of facts which would support SSI's fraud claim. Because Birch did not meet its burden in the trial court, the motion to dismiss was properly denied.

## VII. CONCLUSION

¶ 16 The trial court properly dismissed SSI's rate-based contract claim based on the filed tariff doctrine and properly denied the motion to dismiss as to the fraud claim. The trial court is affirmed, and the cause remanded for further proceedings.

CERTIFIED INTERLOCUTORY ORDER AFFIRMED; CAUSE REMANDED FOR FURTHER PROCEEDINGS.

¶ 17 HARGRAVE, C.J., WATT, V.C.J., LAVENDER, OPALA (by separate writing), KAUGER, SUMMERS, WINCHESTER, JJ., concur.

¶ 18 BOUDREAU, J., concur in result (by separate writing).

BOUDREAU, J., concurring in result:

¶ 1 I concur in the result reached by the majority opinion. I write separately only because I would expressly adopt the filed

S.W.2d 326, 331–32 (Mo.Ct.App.1999) (applying Kansas law); *Bulbman*, 825 P.2d at 590; *Garrison v. Pacific Northwest Bell*, 45 Or.App. 523, 608 P.2d 1206, 1211 (1980); *Tate v. Mountain States Tel. and Tel. Co.*, 647 P.2d 58, 60 (Wyo. 1982); 74 Am.Jur.2d Telecommunications § 50 (2001); Tedson J. Meyers, Liability Limitations in International Data Traffic: The Consequences of Deregulation, 16 Case W. Res. J. Int'l L. 203, 215 (1984).

None of the cases on which Birch relies deal with fraudulent conduct: all address ordinary negligence. *See Bellsouth Telecommunications, Inc. v. Kerrigan*, 55 F.Supp.2d 1314, 1319 (N.D.Fla.1999); *Danisco Ingredients United States, Inc. v. Kansas City Power & Light Co.*, 267 Kan. 760, 986 P.2d 377, 385 (1999); *Houston Lighting & Power Co. v. Auchan United States*, 995 S.W.2d 668, 671–72 (Tex.1999); *Warner v. Southwestern Bell Tel. Co.*, 428 S.W.2d 596 (Mo. 1968).

**25.** 12 Cal.3d 1, 114 Cal.Rptr. 753, 523 P.2d 1161, 1164 (1974).

**26.** *Wilkinson v. New England Tel. & Tel. Co.*, 327 Mass. 132, 97 N.E.2d 413, 416 (1951).

**27.** *Id.*

**28.** *Id.*

**29.** *Mothershed v. Mothershed*, 1985 OK 23, 701 P.2d 405; *Stillwater Industrial Foundation, Inc. v. State Bd. of Regents of Okla. Ag. and Mechanical Colleges*, 1975 OK 127, 541 P.2d 173; *Frey v. Independence Fire and Casualty Co.*, 1985 OK 25, 698 P.2d 17.

**30.** *Patel v. OMH Medical Ctr., Inc.*, 1999 OK 33, ¶ 43 n. 62, 987 P.2d 1185, 1202 n. 62.

tariff doctrine (also known as the filed rate doctrine) in Oklahoma and then recognize the fraud exception to the doctrine.

¶ 2 Satellite Systems, Inc. (SSI) sued Birch Telecom of Oklahoma, Inc. (Birch). SSI asserted two theories of liability, breach of contract and fraudulent inducement. Birch moved to dismiss both theories on the ground that both are precluded by the filed tariff doctrine. The trial court agreed that the breach of contract theory is precluded by the filed tariff doctrine but allowed the fraud theory to go forward.

¶ 3 The trial court certified for appeal its interlocutory order denying Birch's motion to dismiss the fraud theory. The majority opinion affirms the trial court, holding that "even if a state filed rate doctrine has been adopted in Oklahoma, it does not bar a common law fraud claim."

¶ 4 The majority opinion neither adopts nor rejects the filed tariff doctrine. Rather, it creates an exception to a doctrine it has not adopted. Without this court explicitly adopting the doctrine, the question of whether to create an exception to the doctrine is purely hypothetical.

¶ 5 It has long been the rule that we do not give advisory opinions or answer hypothetical questions. *Dank v. Benson,* 2000 OK 40, 5 P.3d 1088, 1091; *Keating v. Johnson,* 1996 OK 61, 918 P.2d 51, 61; *Application of Fun Country Development Authority,* 1977 OK 138, 566 P.2d 1167; *City of Shawnee v. Taylor,* 1943 OK 11, 132 P.2d 950; *Shinn v. Oklahoma City,* 1939 OK 29, 87 P.2d 136 (1939). For this reason, I would expressly adopt the filed tariff doctrine and then recognize the fraud exception to the doctrine.

OPALA, J., concurring in the court's opinion.

¶ 1 The qualifiedly concurring justice invites the court, once again, to expand its inquiry beyond the issues necessary to decide. Mindful as I am of the time-honored principle that appellate courts may not extend their pronouncements beyond the strict framework of matters *that must be resolved,* I join the court in declining his tempting offer. *Myers v. Lashley,* 2002 OK

14, 44 P.3d 553, 561. See *Patterson v. Beall,* 2000 OK 92, 19 P.3d 839, 849–50 (Opala, J., dissenting), for my warning against "hyper-global" pronouncements.