Joel BROWN and Iris Brown,
Plaintiffs Below,
Appellants,

v.

UNITED WATER DELAWARE INC.,
Defendant Below, Appellee.

No. 291, 2009.

Supreme Court of Delaware.

Submitted: Nov. 3, 2009.
Decided: Feb. 15, 2010.

L. Vincent Ramunno, Esquire, Ramunno & Ramunno, P.A., Wilmington, DE, for Appellants.

Sean J. Bellew, Esquire, (argued) and David A. Felice, Esquire, Ballard Spahr Andrews & Ingersoll, LLP, Wilmington, DE, for Appellee.

Before STEELE, Chief Justice, HOLLAND, BERGER, JACOBS and RIDGELY, Justices, constituting the Court en Banc.

BERGER, Justice:

In this appeal we consider whether homeowners may state a claim for damages allegedly caused by the negligence of a public utility. The so-called "filed rate doctrine" requires regulated utilities to charge all of their customers the rate approved by the regulator. The filed rate generally includes restrictions on the utility's liability. In this case, a water company included in its filed rate a provision exempting it from all liability for damages arising from fire or the failure to provide adequate water pressure. The homeowners allege that their house suffered serious fire damage because the responding fire fighters were unable to open the two hydrants closest to their house. The trial court held that the utility was immune from liability under the filed rate doctrine. We agree that the filed rate doctrine may restrict or eliminate liability for a public utility's ordinary negligence. It is not at all clear, however, that the filed rate doctrine would apply in cases of gross negligence or willful misconduct. The parties did not fairly present that issue to the trial court. Accordingly, we remand to allow the Superior Court to determine whether the homeowners stated a claim for gross negligence or willful conduct, and, if so, whether those claims also are barred by the filed rate doctrine.

## FACTUAL AND PROCEDURAL BACKGROUND

In the early morning of December 20, 2005, Joel and Iris Brown discovered a fire in the living room of their Wilmington home. The Browns' neighbor called 911, and firefighters responded within seven minutes. A paramedic with the firefighting crew attempted to connect the water hose to the hydrant nearest the Brown's house. The paramedic was unable to open

the valve because he was trying to turn the valve in the wrong direction, and broke the stem. The fire chief then sent his crew to the next closest hydrant. They were unable to open the second hydrant, and concluded that it was frozen. The firefighters finally obtained water from a third hydrant, which was much farther from the Browns' home. By that time, however, the crew had been on the scene for more than 30 minutes and it was too late to save any portion of the house.

Investigations later revealed that United Water Delaware, Inc. had painted over the top of the first hydrant, thereby covering the arrow that shows which way to open the valve. United Water's inspection records described the second hydrant as "very hard to open" in November 2004 and "hard to open" in April 2005. Nonetheless, the record indicates that United Water took no action to correct the problem. The Fire Marshall's Office concluded that the second hydrant failed due to lack of maintenance.

United Water's "Tariff for Water Service" provides:

49. The Company shall not be considered an insurer of property or persons or to have undertaken to extinguish fire or to protect persons or property against loss by fire or otherwise. The Company does not guarantee any special service, pressure, capacity or facility other than what is provided by ordinary and changing operating conditions as they exist from day to day. *It is agreed by the parties receiving service that the Company shall be free and exempt from any and all claims for injury to persons or property by reason of fire, water, failure to supply water pressure or capacity.*[1]

In 2007, the Browns filed a three count complaint alleging negligence, negligent infliction of emotional distress, and intentional infliction of emotional distress. The trial court summarily dismissed the claim for negligent infliction of emotional distress. In 2009, shortly before the scheduled trial date, United Water moved for summary judgment on the remaining claims. The Superior Court granted the motion, holding that the Browns' claims are barred by the filed rate doctrine. This appeal followed.

## DISCUSSION

The filed rate doctrine originated as a matter of federal law. It forbids a regulated entity from charging rates other than those filed with the regulatory agency. The United States Supreme Court explained:

Under the Interstate Commerce Act, the rate of the carrier duly filed is the only lawful charge. Deviation from it is not permitted upon any pretext.... Ignorance or misquotation of rates is not an excuse for paying or charging either less or more than the rate filed. This rule is undeniably strict and it obviously may work hardship in some cases, but it embodies the policy which has been adopted by Congress in the regulation of interstate commerce in order to prevent unjust discrimination.[2]

"The rights as defined by the tariff cannot be varied or enlarged by either contract or tort of the carrier."[3] The filed rate doc-

---

1. Appellant's Appendix, A–47, 48 (Emphasis added.).

2. *Louisville & Nashville R. Co. v. Maxwell,* 237 U.S. 94, 97, 35 S.Ct. 494, 59 L.Ed. 853 (1915).

3. *Keogh v. Chicago & Northwestern R. Co.,* 260 U.S. 156, 163, 43 S.Ct. 47, 67 L.Ed. 183 (1922).

trine serves two purposes—it recognizes the agency's autonomy in setting fair rates and it prevents service or rate discrimination among consumers.

Many states have applied the principles of this federal doctrine to the rates filed and approved by state regulatory agencies.[4] The Delaware Court of Chancery recognized the doctrine, although not by name, in *Woloshin v. Diamond State Telephone Co.*[5] Two lawyers sued the telephone company for omitting their listing in the yellow pages of the phone book. The trial court noted that the phone company had included a limitation on liability in its rates filed with the Public Service Commission, and that it included the same limitation in its contract with the lawyers. The trial court reasoned:

> The theory is ... that, since [the utility] renders a service affecting the public, the state shall regulate and control it in order to prevent injustice, and, ... in consideration of such regulation and control, [the utility's] liability is and should be defined and limited. In a sense it is a matter of contract, on the one hand by the utility, and on the other by the state representing all its citizens.[6]

The *Woloshin* court acknowledged that at least one other jurisdiction had imposed liability on a telephone company for a similar omission, but declined to follow that precedent. The court stated that, "the great weight of authority [is] to the effect that a contractual limitation of liability on the part of a public utility for mere inad-vertence is not unconscionable or violative of public policy."[7] We conclude that *Woloshin* is a correct statement of the law, and that the Browns' claims for negligence were defeated by Paragraph 49 of United Water's filed rate, cited above.

On appeal, the Browns argue that their complaint alleges gross negligence and willful and wanton conduct. Although Paragraph 49 of United Water's filed rate purports to exempt the utility from all claims, it is not clear that the filed rate doctrine provides absolute immunity. "Courts overwhelmingly reject attempts to limit liability either by contract or by tariff for gross negligence, willful misconduct, and fraud."[8] We will not address that issue, however, because it was not fairly presented to the Superior Court.[9]

## CONCLUSION

Based on the foregoing, we remand for further action in accordance with this decision. Jurisdiction is retained.

4. *See, e.g., Molokoa Village Dev. Co. v. Kauai Elec. Co.,* 60 Haw. 582, 593 P.2d 375 (1979); *Siewert v. Northern States Power Co.,* 757 N.W.2d 909 (Ct.App. Minn 2008); *Adams v. Northern Illinois Gas Co.,* 211 Ill.2d 32, 284 Ill.Dec. 302, 809 N.E.2d 1248 (2004); *Satellite System, Inc. v. Birch Telecom of Oklahoma, Inc.,* 51 P.3d 585 (Ok.2002); *Southern Bell Tel. & Tel. Co. v. Invenchek, Inc.,* 130 Ga.App. 798, 204 S.E.2d 457 (1974).

5. 380 A.2d 982, 984 (Del.Ch.1977).

6. *Id.* at 984 (Quotation and citation omitted.).

7. *Ibid.*

8. *Satellite System, Inc.,* 51 P.3d at 589.

9. Sup.Ct. R. 8.