519 P.2d 874

**Ronald W. SOMMER, Appellant,**

v.

**The MOUNTAIN STATES TELEPHONE AND TELEGRAPH COMPANY, a corporation, Appellee.**

**No. 2 CA–CIV 1510.**

Court of Appeals of Arizona, Division 2.

March 4, 1974.

As Amended March 15, 1974.

Ronald W. Sommer, in pro per.

Bilby, Thompson, Shoenhair & Warnock, P. C., by T. Scott Higgins, Tucson, for appellee.

## OPINION

HOWARD, Judge.

The facts which gave rise to this controversy are as follows. Appellant (plaintiff below) is an attorney practicing law in Tucson, Arizona. Appellee (defendant below) is an exclusively-franchised utility providing telephone service in Tucson. As part of its ordinary telephone services, defendant, upon request and for a reasonable time undertakes to monitor a previous telephone number, intercept incoming calls and refer callers to a new number of the subscriber. This is called "intercept service".

Prior to the month of May, 1971, plaintiff was using and was listed in the telephone directory as having the number 623–8638. In May he moved his office and acquired a new number, 624–8601, from an attorney who was leaving private practice. This change of address and telephone number was reflected in a new telephone directory which was distributed ten weeks later, beginning July 19, 1971.

Before acquiring his new telephone number, plaintiff telephoned and discussed his impending move with a business representative of Mountain Bell. He was told that the telephone company would be willing to place his old number on intercept service. He specifically inquired whether the intercept service could be provided until distribution of the new telephone directories was completed and was assured that the company records would reflect that the service should remain in effect until delivery of the new directories. A notation

was in fact made on the company records and in reliance upon this plaintiff took over the new number.

On June 14, 1971, "due to a shortage of dual rotational numbers" plaintiff's old telephone number was assigned to another subscriber and the intercept service was discontinued without notice.

After discontinuance of the service, telephone calls placed to the plaintiff's old number were not intercepted by Mountain Bell nor were they referred to him by the new subscriber to whom the number had been assigned. Distribution of the new directories was not completed until July 26, 1971.

Plaintiff brought this action against the phone company to recover damages caused by discontinuance of the intercept service.

At the time in question, there was in effect a general Exchange Tariff, General Regulation Sec. 20(G) which provided in pertinent part:

"(G)(1) In view of the fact that the customer has exclusive control of his communications over the facilities furnished him by the Telephone Company, and of the other uses for which facilities may be furnished him by the Telephone Company, and because of unavoidability of errors incident to the services and to the use of such facilities of the Telephone Company, the services and facilities furnished by the Telephone Company are subject to the terms, conditions and limitations specified in (2), (3) and (4) following.

(G)(2) The liability, of any, of the Telephone Company for mistakes, omissions, interruptions, delays, errors or defects in transmission, service or facilities shall in no event exceed the amount of the charge to the customer for the transmission, service or facilities for the period of the mistake, omission, interruption, delay, error or defect; provided, however, that this limitation of liability shall not apply in the event the mistake, omission, interruption, delay, error or defect in transmission, service or facilities is caused by the *willful and deliberate act of the Telephone Company* (unless the act is authorized or permitted by other tariffs or special contract) and, provided further, that there shall be no abatement or reduction of charge in the event the mistake, omission, interruption, delay, error or defect in transmission, service or facilities is caused by an act or omission of the customer." (Emphasis added)

The trial court found Mountain Bell breached its agreement with the plaintiff to provide intercept service until new directories had been issued, and that this breach was the result of a deliberate business decision on the part of the company.

The trial court further found that although discontinuance of the intercept service was "wilful" in the sense that it was deliberately and knowingly done, it was not a wilful act in the sense that it was done with malice or with a primary intent to injure the plaintiff. Accordingly, it ruled that the tariff limitation applied and plaintiff could recover only $65.00, the amount which the company charged under its rate schedule during the period it failed to afford intercept service.

Plaintiff has appealed the judgment insofar as it determined the existence of a limitation on liability and limited damages to the sum of $65.00.

The sole question presented by this appeal is whether the exculpatory clause within the tariff precludes liability for "willful and deliberate" acts unless a customer can show malice or intent to injure him.

██ It is well established that where a telephone company files rules and regulations with the Public Utilities Commission, such rules and regulations are binding upon all customers whether or not they agree to or have knowledge of their exis-

388

tence. Warner v. Southwestern Bell Telephone Company, 428 S.W.2d 596 (Mo. 1968). The subject tariff became part of the contract between Mountain Bell and plaintiff. A contract must be construed so that every part of it is given effect. New Pueblo Constructors, Inc. v. Lake Patagonia Recreation Association, Inc., 12 Ariz. App. 13, 467 P.2d 88 (1970). The effect which would be given to the phrase "unless the act is authorized or permitted by other tariffs or special contract", if we accept Mountain Bell's contention that malice or intent to injure is necessary, would be that it would escape liability for acts done under authorization of other tariffs even if done with malicious intent to injure the other contracting parties. We do not believe this to be the intent of the tariff provision.

Webster's New World Dictionary defines wilful as "done deliberately or intentionally". Deliberate is defined as "carefully thought out or formed; premeditated; done on purpose". Nowhere in these definitions do we find an implication of malice. The words employed in a contract and the purpose of the writing must be ascertained from their common sense meaning as a whole. Heidlebaugh v. Miller, 126 Cal.App.2d 35, 271 P.2d 557 (1954).

We find that even if a requirement of malice can be read into the tariff, the plaintiff is still entitled to recover. Malice has been defined by our Supreme Court as the " 'intentional doing of a wrongful act without legal justification or excuse, or . . . the wilful violation of a known right. . . . [M]alice in the sense of ill will or spite not being essential.' " Meason v. Ralston Purina Co., 56 Ariz. 291 at 300, 107 P.2d 224 at 228 (1940). We hold that the damages under the facts of this case are not limited by the tariff.

Judgment reversed and the cause remanded for determination of the amount of damages due to the plaintiff.

HATHAWAY, C. J., and KRUCKER, J., concur.