273 P.3d 668

Sylvia ASSYIA, individually,
Plaintiff/Appellee,

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, a foreign corporation, Defendant/Appellant.

No. 1 CA–CV 10–0678.

Court of Appeals of Arizona,
Division 1, Department C.

March 22, 2012.

Plattner Verderame P.C. By Richard S. Plattner, Phoenix, Attorneys for Plaintiff/Appellee.

Edythe H. Kelly & Associates By Edwin R. Roberts, DeCiancio Robbins P.L.C. By Joel DeCiancio, Christopher Robbins, Tempe, Co-counsel for Defendant/Appellant.

## OPINION

DOWNIE, Judge.

¶ 1 State Farm Mutual Automobile Insurance Company ("State Farm") appeals from a judgment awarding attorneys' fees and costs to Sylvia Assyia. State Farm contends Assyia's breach of contract action, alleging a failure to pay uninsured motorist ("UM") policy benefits to which she was entitled, sounds in tort, not contract, rendering a fee award under Arizona Revised Statutes ("A.R.S.") section 12–341.01(A) improper. We disagree and therefore affirm the judgment of the superior court.

## FACTS AND PROCEDURAL HISTORY

¶ 2 In June 2008, 90–year–old Assyia was a passenger in a vehicle that was involved in an accident caused by an uninsured motorist. She suffered a concussion, chest wall injury, open scalp wound, and compression fractures of her thoracic spine. Assyia was hospitalized for three days and then discharged to a rehabilitation center. In late June, she returned home. In August, Assyia sustained additional injuries when she fell while walking.

¶ 3 State Farm insured both Assyia and her host driver. Assyia's counsel wrote to State Farm in November 2008, documenting medical expenses and other financial losses exceeding $52,000, and explaining that the injuries had affected Assyia's daily living activities. Assyia asked State Farm to tender the host driver's $100,000 UM policy limits, plus her own UM policy limits of $50,000. State Farm paid Assyia the host driver's $100,000 policy limits, but determined her claim "was only worth another $2,000" and paid that amount under Assyia's policy.

¶ 4 Assyia filed a breach of contract action against State Farm, alleging it had failed to

adequately compensate her under the insurance policy. She sought the balance of her UM policy limits, plus costs and attorneys' fees. State Farm answered and claimed, *inter alia,* that Assyia was not entitled to recover attorneys' fees because her action sounded in tort, not contract.

¶ 5 After Assyia and her treating physician were deposed, Assyia amended her disclosure statement to assert that injuries and complications from the August 2008 fall were causally related to the automobile accident. Her amended disclosures also re-characterized previously disclosed medical records from the 2008 fall as being "crash related." State Farm re-evaluated Assyia's claim and tendered the $48,000 balance of her UM coverage.

¶ 6 The parties agreed to submit the question of Assyia's entitlement to fees, costs, and Arizona Rule of Civil Procedure ("Rule") 68 sanctions to the superior court. After briefing and argument, the court ruled that Assyia was the successful party to a dispute arising out of contract and awarded her fees and costs, but denied Rule 68 sanctions.[1]

¶ 7 Assyia's counsel filed an affidavit itemizing the time spent before State Farm tendered the $48,000 in UM benefits (19.9 attorney hours, 12.7 paralegal hours) and the time expended after (32.5 attorney hours, 3.8 paralegal hours). Assyia sought reimbursement for 52.4 hours of attorney time at $400 an hour ($20,960), 16.5 legal assistant hours ($1237.50), and $764.99 in computerized legal research fees. Assyia also filed a statement of costs. State Farm objected to any fee award and alternatively suggested the court award "only a small percentage" of the fees requested. It did not object to the amount of costs, but argued Assyia was not entitled to taxable costs.

¶ 8 The superior court awarded Assyia $19,000 in fees and $763.80 in costs. State Farm timely appealed. We have jurisdiction pursuant to A.R.S. § 12–2101(B).

---

1. Assyia had served State Farm with an offer of judgment that was not accepted. Rule 68 sanctions are not at issue in this appeal.

2. Although *Arrington* involved underinsured motorist coverage ("UIM"), the public policy underlying UM coverage is the same: to provide a

## DISCUSSION

¶ 9 State Farm contends the superior court erred by: (1) awarding Assyia fees pursuant to A.R.S. § 12–341.01(A); (2) awarding an unreasonable amount of fees; and (3) awarding costs. We address each argument in turn.

## I.  Applicability of A.R.S. § 12–341.01(A)

¶ 10 According to State Farm, Assyia's claim is tort-based, making a fee award under A.R.S. § 12–341.01(A) improper. Section 12–341.01(A) authorizes a fee award to the successful party in "any contested action arising out of a contract." Application of this provision is a question of statutory interpretation that we review *de novo. Ramsey Air Meds, L.L.C. v. Cutter Aviation, Inc.,* 198 Ariz. 10, 13, ¶ 12, 6 P.3d 315, 318 (App.2000) (citing *Hampton v. Glendale Union High Sch. Dist.,* 172 Ariz. 431, 433, 837 P.2d 1166, 1168 (1992)).

### A.  Fundamental Nature of the Action

¶ 11 State Farm argues Assyia's claim "is no different than if she had filed a negligence claim against the uninsured motorist," with the insurer merely stepping into the shoes of the uninsured driver to compensate her for damages caused by that driver's negligence. *See State Farm Mut. Auto. Ins. Co. v. Arrington,* 192 Ariz. 255, 259, ¶¶ 17–18, 963 P.2d 334, 338 (App.1998) (citations and internal quotation marks omitted) (the purpose of UM coverage is to place the victim's insurer "in the shoes of the tortfeasor" to pay damages for which the uninsured driver is legally liable).[2] State Farm suggests it is "the 'functional equivalent' of a liability carrier for the uninsured motorist."

¶ 12 An action sounds in contract when the duty breached is "created by the contractual relationship, and would not exist 'but for' the contract." *Barmat v. John &*

source of indemnification for victims of negligent, financially irresponsible motorists. *State Farm Mut. Auto. Ins. Co. v. Wilson,* 162 Ariz. 251, 254, 782 P.2d 727, 730 (1989) (citations omitted).

*Jane Doe Partners A–D,* 155 Ariz. 519, 523, 747 P.2d 1218, 1222 (1987); *see also ASH, Inc. v. Mesa Unified Sch. Dist. No. 4,* 138 Ariz. 190, 192, 673 P.2d 934, 936 (App.1983) ("[A]s used in A.R.S. § 12–341.01, the words 'arising out of a contract' describe an action in which a contract was a factor causing the dispute."). An action sounds in tort when a "mere bystander" could recover because the liability exists without a contract. *Barmat,* 155 Ariz. at 523 n. 1, 747 P.2d at 1222 n. 1.

¶ 13 Assyia sued State Farm based on her contract with the insurer. *See Liberty Ins. Underwriters, Inc. v. Weitz Co.,* 215 Ariz. 80, 83, ¶ 7, 158 P.3d 209, 212 (App.2007) (citing *Tolifson v. Globe Am. Cas. Co.,* 138 Ariz. 31, 32, 672 P.2d 983, 984 (App.1983)) ("An insurance policy is a contract between the insurer and its insured."). We agree with Assyia that "[t]he tort committed by the adverse driver was simply the trigger for [State Farm's] contractual duty." But for the insurance contract, State Farm would have no duty to compensate Assyia for damages caused by the uninsured driver. *See Ramsey,* 198 Ariz. at 16, ¶ 27, 6 P.3d at 321 ("The test is whether the defendant would have a duty of care under the circumstances even in the absence of a contract."); *cf. Transnational Ins. Co. v. Simmons,* 19 Ariz. App. 354, 356, 507 P.2d 693, 695 (1973) (citing *Hartford Accident & Indem. Co. v. Mason,* 210 So.2d 474 (Fla.Dist.Ct.App.1968)) (six-year statute of limitations for written contract actions governs uninsured motorist claims because "[w]ithout the policy ... there would be no claim against the company"); *Ariz. Dep't of Admin. v. Cox,* 222 Ariz. 270, 278 n. 6, ¶ 35, 213 P.3d 707, 715 n. 6 (App.2009) ("Underinsured motorist coverage arises from contractual liability.").

¶ 14 We also disagree with State Farm's assertion that Assyia's action is tort-based because the insurer could contest damages "[l]ike the uninsured motorist" in a negligence action. Indeed, State Farm's reliance on policy language in advancing this claim further bolsters the notion that Assyia's claim is based on and arises under the insurance contract.

## B. Breach of Contract

¶ 15 State Farm advances various reasons why it committed no breach of contract. It contends, for example, that the parties "strictly complied with the terms of the contract." It also posits that no breach occurred because Assyia "never obtained an arbitration award or judgment and State Farm has *paid* the policy limit."

¶ 16 These arguments, though, are immaterial to the issue before us. The relevant question is whether the underlying lawsuit is a "contested action arising out of a contract," A.R.S. § 12–341.01(A), not whether State Farm in fact breached the insurance contract.

## C. Contested Action

¶ 17 State Farm argues the fee award was improper because the action was not contested once Assyia "made full disclosure of her claim and damages." We reject such a restrictive view of the proceedings.

¶ 18 "[A] contested action is one in which the defendant has appeared and generally defends against the claims and demands made by the plaintiff." *Morrison v. Shanwick Int'l Corp.,* 167 Ariz. 39, 46, 804 P.2d 768, 775 (App.1990); *see also* Black's Law Dictionary 361 (9th ed. 2009) (defining "contest" to mean an action taken to "deny an adverse claim or assert a defense to it in a court proceeding"). State Farm contested Assyia's claim. It appeared in the lawsuit by filing an answer that denied liability. Even after the UM balance was paid, the action remained contested. The parties agreed Assyia could seek an award of fees and costs. Her ensuing request was vigorously opposed. We have no difficulty concluding that this litigation was a contested matter from its inception through the entry of judgment in the superior court.

## D. Effect of Policy Limits

¶ 19 State Farm also argues the fee award was improper because "the parties agreed in the insurance contract that State Farm's maximum payment under the UM provisions would be limited to the $50,000

policy limit." State Farm relies on the following policy language:

> Regardless of the amount of any award, including any judgment or default judgment, we are not obligated to pay any amount in excess of the available limits under this coverage of this policy.

¶ 20 State Farm cites *Arrington* for the proposition that UM coverage "may be tapped only to the extent of actual legal damages." 192 Ariz. at 260, ¶ 20, 963 P.2d at 339. What *Arrington* actually prohibits, though, is a "windfall" in excess of "actual legal damages." *Id.* (citing *Geyer v. Reserve Ins. Co.*, 8 Ariz.App. 464, 467, 447 P.2d 556, 559 (1968)).

¶ 21 Assyia did not request or receive damages in excess of policy limits. Attorneys' fees requested and awarded pursuant to statute are not damages caused by an uninsured driver. The contractual limitation in the policy may cap State Farm's obligation to pay damages, but it does not prohibit a court from awarding attorneys' fees that are specifically authorized by law. *Cf. Higginbottom v. State*, 203 Ariz. 139, 142, ¶ 11, 51 P.3d 972, 975 (App.2002) (citations omitted) ("It has long been the rule in Arizona that a valid statute is automatically part of any contract affected by it, even if the statute is not specifically mentioned in the contract.").

## II. Attorneys' Fee Award

■ ¶ 22 State Farm objects to the "hybrid" nature of Assyia's fee agreement, but cites no authority for the proposition that such agreements are unenforceable under A.R.S. § 12–341.01, and we are aware of none. Once a litigant establishes entitlement to a fee award, the touchstone under § 12–341.01 is the reasonableness of the fees. And as we discuss *infra*, the superior court did not abuse its discretion in concluding that $19,000 constituted a reasonable fee.

■ ¶ 23 State Farm also complains about the "partially reconstructed" nature of counsel's time records. It cites *Spain v. Valley Forge Insurance Co.*, 152 Ariz. 189,

195, 731 P.2d 84, 90 (1986), for the proposition that a court must reject reconstructed records unless it holds an evidentiary hearing. The *Spain* court denied a request for appellate fees based on counsel's "attempt to reconstruct the time spent," but it specifically stated it was "unwilling to hold that counsel fees *can never be awarded* to those who work on a contingent fee and do not keep time records." *Id.* (Emphasis added.)

¶ 24 In the case at bar, State Farm did not request an evidentiary hearing. The record establishes that "most major time events" were recorded contemporaneously. Additionally, the superior court declined to award the full amount Assyia requested, reducing fees by approximately 18%. Under these circumstances, the court did not commit reversible error by considering partially reconstructed time records.

■ ¶ 25 In considering the amount of a fee award under A.R.S. § 12–341.01, we review for an abuse of discretion. *Fisher v. Nat'l Gen. Ins. Co.*, 192 Ariz. 366, 370, ¶ 13, 965 P.2d 100, 104 (App.1998). We consider whether "a judicial mind, in view of the law and circumstances, could have made the ruling without exceeding the bounds of reason." *Associated Indem. Corp. v. Warner*, 143 Ariz. 567, 571, 694 P.2d 1181, 1185 (1985) (citing *Davis v. Davis*, 78 Ariz. 174, 179, 277 P.2d 261, 265 (1954) (Windes, J., specially concurring)).

■ ¶ 26 Assyia agreed to pay her lawyer the greater of $400 per hour or a percentage of her recovery if the court awarded fees. Nothing in the record reflects that Assyia was relieved from her obligation to pay the higher sum. Counsel's fee affidavit documented attorney, paralegal, and computerized legal research time totaling $22,962.49. The superior court ruled that "reasonable" fees totaled $19,000. In reaching this decision, the court "substantively reviewed the procedural and litigation history of this case and these circumstances in accordance with the factors set forth in *Associated [I]ndemnity Corp. v. Warner*."[3]

---

3. Those factors are: the merits of the claim or defense; whether litigation could have been avoided or settled; whether a fee assessment would cause an extreme hardship; whether the successful party prevailed with respect to all of the relief sought; the novelty of the legal ques-

¶ 27 Relying on A.R.S. § 12–341.01(B), State Farm argues the superior court should have capped fees at $16,000 because that was the amount Assyia would have owed under the contingency provision. We conclude otherwise. Section 12–341.01(B) states that a fee award "need not equal or relate to the attorney fees actually paid or contracted," but also prohibits an award that "exceed[s] the amount paid or agreed to be paid." In this case, Assyia agreed to pay the "greater" sum of the contingency percentage or the predetermined hourly rate. The court awarded less than the "greater" of these two amounts.

¶ 28 State Farm also contends Assyia's counsel should have been compensated "$2,500 to $3,500 at the most" for tasks performed before the UM policy limits were tendered. As noted *supra*, though, this case remained contested well after the UM policy limits were paid. Additionally, counsel's fee affidavit, as required, disclosed "the type of legal services provided, the date the service was provided, the attorney providing the service . . . and the time spent in providing the service." *Schweiger v. China Doll Rest., Inc.*, 138 Ariz. 183, 188, 673 P.2d 927, 932 (App.1983) (citing ARCAP 21). It also provided "sufficient detail to enable the court to assess the reasonableness of the time incurred." *Id.*

¶ 29 Once a party establishes entitlement to fees and meets the minimum requirements in an application and affidavit, as Assyia did here, the burden shifts to the party opposing the fee award to demonstrate the impropriety or unreasonableness of the requested fees. *State ex rel. Corbin v. Tocco*, 173 Ariz. 587, 594, 845 P.2d 513, 520 (App.1992). State Farm's somewhat generalized advocacy for a $2500 to $3500 award is unpersuasive. Although State Farm argued its delay in paying the UM policy limits was due to Assyia's failure to link the August fall to the auto accident in a more timely fashion, the superior court had the discretion to reject this characterization or to conclude,

based on the *Associated Indemnity* factors, that the fee award was nonetheless reasonable. We cannot say the court's ultimate decision "exceed[ed] the bounds of reason." *See Associated Indem.*, 143 Ariz. at 571, 694 P.2d at 1185.

¶ 30 We are similarly unpersuaded by the assertion that $400 was an unreasonable hourly rate because this was a case that "could have been handled by a first-year associate." *See Corbin*, 173 Ariz. at 594, 845 P.2d at 520 (citing *State v. Maricopa County Med. Soc'y*, 578 F.Supp. 1262, 1264 (D.Ariz. 1984)) (opposing party cannot simply claim that the rates submitted are "too high"). Assyia supported her fee request with an affidavit from counsel that documented his experience and credentials, including more than 30 years' experience and certification as a specialist in injury and wrongful death litigation. Assyia was entitled to retain competent, experienced counsel to represent her, and a commensurate hourly rate was not unreasonable.

### III. Award of Costs

¶ 31 Lastly, State Farm disputes the award of costs because there was no judgment or adjudication by which either party could be deemed the prevailing party. Section 12–341 reads:

> The successful party to a civil action shall recover from his adversary all costs expended or incurred therein unless otherwise provided by law.

¶ 32 A cost award "is mandatory in favor of the successful party." *In re Estate of Miles*, 172 Ariz. 442, 444, 837 P.2d 1177, 1179 (App.1992) (citing *Trollope v. Koerner*, 21 Ariz.App. 43, 515 P.2d 340 (1973)). "[T]he trial court has substantial discretion to determine who is a 'successful party.'" *Fulton Homes Corp. v. BBP Concrete*, 214 Ariz. 566, 572, ¶ 25, 155 P.3d 1090, 1096 (App.2007) (citing *Pioneer Roofing Co. v. Mardian Constr. Co.*, 152 Ariz. 455, 467, 733 P.2d 652, 664 (App.1986)).

tion presented and whether such claim or defense had previously been adjudicated; and whether an award would discourage other parties with tenable claims or defenses from litigating or defending legitimate contract issues for fear of incurring liability for substantial amounts of attorneys' fees. *Associated Indem.*, 143 Ariz. at 570, 694 P.2d at 1184.

¶ 33 Assyia was clearly "[t]he successful party to a civil action." She received a monetary judgment in a contested proceeding. State Farm's complaint that the matter was resolved by settlement is both unavailing and, to some extent, inaccurate, as we have previously noted. "The term 'adjudication' ... encompasses the entry of a judgment that determines claims in a case, but 'adjudication' does not necessarily mean that this determination must follow a trial or even a hearing." *4501 Northpoint LP v. Maricopa County*, 212 Ariz. 98, 101, ¶ 15, 128 P.3d 215, 218 (2006). The superior court properly awarded Assyia taxable costs.

### IV. Attorneys' Fees and Costs on Appeal

¶ 34 Assyia requests attorneys' fees and costs incurred on appeal, citing only ARCAP 21, which does not provide a substantive basis for a fee award. We therefore deny her request. *See Ezell v. Quon*, 224 Ariz. 532, 539, ¶ 31, 233 P.3d 645, 652 (App. 2010). As the prevailing party, though, Assyia is awarded her appellate costs upon compliance with ARCAP 21.

### CONCLUSION

¶ 35 For the foregoing reasons, we affirm the judgment of the superior court.

CONCURRING: PATRICIA K. NORRIS, Presiding Judge and ANN A. SCOTT TIMMER, Judge.