NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

# ARIZONA COURT OF APPEALS
## DIVISION ONE

---

JOHNSON UTILITIES, LLC dba JOHNSON UTILITIES COMPANY, an
Arizona limited liability company; THE CLUB AT OASIS, LLC, an
Arizona limited liability company, *Plaintiffs/Appellants/Cross-Appellees*,

*v.*

SWING FIRST GOLF, LLC, an Arizona limited liability company,
*Defendant/Appellee/Cross-Appellant*,

DAVID ASHTON, *Defendant/Appellee*.

No. 1 CA-CV 13-0625
FILED 8-27-2015

---

Appeal from the Superior Court in Maricopa County
No. CV2008-000141
The Honorable John Christian Rea, Judge

**AFFIRMED**

---

COUNSEL

Sanders & Parks, PC, Phoenix
By Garrick L. Gallagher, Anoop Bhatheja

Margrave Celmins, PC, Scottsdale
By Lat J. Celmins, Michael L. Kitchen
*Co-Counsel for Plaintiffs/Appellants/Cross-Appellees*

Craig A. Marks, PLC, Phoenix
By Craig A. Marks
*Counsel for Defendant/Appellee/Cross-Appellant Swing First Golf, LLC*

---

**MEMORANDUM DECISION**

Judge Maurice Portley delivered the decision of the Court, in which Presiding Judge Andrew W. Gould and Judge Jon W. Thompson joined.

---

**P O R T L E Y**, Judge:

¶1            Johnson Utilities, LLC ("Utility") and The Club at Oasis, LLC ("Oasis") (collectively "Utility/Oasis") challenge the jury verdicts and resulting judgment in favor of Swing First Golf, LLC ("SFG").   The appellants argue: (1) the court, and jury, lacked jurisdiction to decide SFG's breach of tariff contract claim; (2) the court erred in denying its motion for directed verdict at the close of both trials, and in denying Utility's Arizona Rule of Civil Procedure ("Rule") 50 motion at the conclusion of the second trial; (3) the court erred by submitting SFG's quantum meruit claim to the jury; (4) the court erred in admitting impermissible and prejudicial evidence; and (5) the court abused its discretion in awarding attorneys' fees and costs to SFG.   And on its cross-appeal, SFG argues the court erred in granting summary judgment to Utility and dismissing SFG's breach of the covenant of good faith and fair dealing claim.   For the following reasons, we affirm the judgment.

**FACTS[1] AND PROCEDURAL HISTORY**

¶2            Utility is a water utility company in the San Tan Valley.  Oasis owns a golf course, and is owned by George Johnson, the president and majority owner of Utility.   SFG purchased a golf course in 2004 from

---

[1] We review the evidence in the light most favorable to sustain the verdict and judgment. *Hutcherson v. City of Phoenix*, 192 Ariz. 51, 53, 961 P.2d 449, 451 (1998) (citations omitted).

Johnson Ranch Holdings[2] and watered the course with water provided by Utility.[3]

¶3        Two years after SFG purchased the golf course, George Johnson and David Ashton, SFG's manager, discussed a plan for SFG to manage the Oasis golf course and, in return for SFG's management services, Johnson proposed to pay SFG with water credits provided by Utility. Ashton drafted a letter of understanding ("Oasis Agreement") outlining the scope of SFG's management services and confirming that Utility would provide water credits to pay for those services.[4]  Ashton and Johnson shook hands in Johnson's office to confirm the agreement.  SFG then began to manage Oasis, and Utility provided the agreed-upon water credits. Specifically, Utility supplied SFG with irrigation water for its golf course each month and sent a monthly invoice.  SFG did not pay the invoice, and the following month's invoice did not show any balance due.

¶4        SFG managed Oasis for six months.  SFG had not anticipated that Johnson would fire the Oasis staff as SFG began managing the golf course and that it would also be responsible for being the golf course's caretaker.  As a result, and after training a new on-site manager, SFG resigned in November 2006.  The following month, after changing SFG's accounts for the CAP water and effluent, Utility sent new invoices to SFG for the irrigation water that had been delivered and credited to SFG under the Oasis Agreement.  The invoices reflected that Utility had raised SFG's rates for effluent from $0.62 per thousand gallons, the rate approved by the

_____

[2] Johnson Ranch Holdings ("JRH") had a Utilities Services Agreement with Utility for water services.  Although JRH did not, as part of the golf course sale, assign its rights under the agreement to SFG, SFG argued during the first trial that the parties adopted the agreement.  However, the court found the Utilities Services Agreement was a discriminatory contract and held that it was "illegal and against public policy" because the agreement provided a benefit to one of Utility's customers without providing that same benefit to its other customers.

[3] Utility initially provided untreated water from the nearby Central Arizona Project canal ("CAP water").  The parties, however, understood and agreed that Utility would provide treated wastewater ("effluent") to SFG for irrigation upon completion of the wastewater treatment plant, and Utility eventually delivered effluent water.

[4] During the first trial, the court held the Oasis Agreement to be unenforceable, and granted Utility's motion for summary judgment in part and dismissed SFG's breach of contract (Oasis Agreement) claim.

Arizona Corporation Commission ("ACC"), to $0.83 per thousand gallons, and raised the CAP water rate from $0.82 per thousand gallons, the ACC tariff rate, to $3.75 per thousand gallons. SFG paid for the water received at the tariff rate.

¶5 Additionally, SFG was not paid for its management services. Moreover, Utility began withholding effluent and, through the end of 2007, delivered almost exclusively the more expensive CAP water to SFG, and billed SFG at the rates above the ACC-approved rates. Utility also turned off SFG's irrigation water in November 2007 claiming that SFG owed about $215,000. SFG filed an informal complaint with the ACC and Utility restored SFG's irrigation service. Then seeking to prevent further service disruption, SFG filed a formal complaint with the ACC. Utility then resumed sending SFG effluent; in fact, Utility once delivered so much effluent that the golf course lake flooded much of the 18th-hole fairway.

¶6 Utility sued SFG and Ashton in January 2008 for failure to pay its water bills and for defamation.[5] In response, SFG answered and filed a thirteen-count counterclaim, including multiple breach of contract claims, quantum meruit, specific performance, negligence and a number of tort claims.[6] After discovery, voluntary dismissals and pretrial motions, including summary judgment for Utility on SFG's bad faith claim, the only claims remaining for trial were the breach of contract claims, SFG's claims for trespass and negligence related to the golf-course flooding, its quantum meruit claim, and defamation claim.

¶7 The dispute was tried in March 2012. The jury's verdicts were as follows: (1) SFG owed Utility $151,156 for breach of contract; (2) Utility owed SFG $1,000,000 for breach of contract; (3) Oasis owed SFG $54,600 on the quantum meruit claim related to the Oasis Agreement; (4) Ashton was awarded $10,000 for compensatory damages and $10,000 as punitive damages for defamation; and (5) Utility was negligent and committed

---

[5] Specifically, Utility alleged: (1) breach of contract (Utility Service Agreement); (2) breach of the covenant of good faith and fair dealing; (3) tortious interference; and (4) defamation (as to SFG and Ashton).

[6] SFG's counterclaims included: (1) breach of contract – Utility Service Agreement; (2) breach of contract – Oasis Agreement; (3) quantum meruit; (4) unjust enrichment; (5) breach of contract – tariff rate schedule; (6) breach of covenant of fair dealing; (7) specific performance; (8) negligence; (9) trespass to land; (10) interference with a business relationship; (11) defamation; (12) unlawful use of monopoly power; and (13) racketeering.

trespass by over-delivering effluent and flooding the golf course, but no damages were awarded.[7] Utility/Oasis filed a motion for a new trial and the court granted the motion, vacated the verdicts on the contract claims and ordered a new trial on those claims.

¶8        The parties then tried the breach of contract issues. After considering the evidence, argument and instructions, the jury only found for SFG on its breach of contract claim and awarded it $41,883.11. The court considered SFG's request for attorneys' fees, and in the final judgment awarded SFG $300,737.25 in attorneys' fees.

¶9        Utility/Oasis then appealed the quantum meruit verdict from the first trial, the breach of contract verdict from the second trial, and SFG's award of attorneys' fees. SFG filed a cross-appeal. We have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") section 12-2101(A)(1)[8] and Arizona Rule of Civil Appellate Procedure 8(a).

## DISCUSSION

### I.        UTILITY/OASIS'S APPEAL

¶10        In challenging the verdicts in favor of SFG on its quantum meruit and breach of tariff contract claims, Utility/Oasis asks that we enter judgment in its favor, or alternatively, for a new trial to correct alleged evidentiary errors. Utility/Oasis also seeks a reduction in SFG's attorneys' fees.

### A.        Subject Matter Jurisdiction

¶11        Utility/Oasis argues that the trial court and, as a result, the jury, lacked jurisdiction to decide SFG's breach of tariff contract claim because the ACC has exclusive jurisdiction over utility regulation.[9] Subject matter jurisdiction is a question of law we review de novo. *State v. Dixon*, 231 Ariz. 319, 320, ¶ 3, 294 P.2d 157, 158 (App. 2013) (citation omitted).

---

[7] Utility/Oasis does not appeal the defamation verdict and SFG does not appeal the verdict on its negligence and trespass claims.

[8] We cite the current version of the statute unless otherwise noted.

[9] Utility/Oasis filed a petition for special action asking this court to review the superior court's denial of its motion to dismiss based on lack of subject matter jurisdiction. We denied the request for stay and declined to take special action jurisdiction.

**¶12**          "Subject matter jurisdiction is the power to hear and determine cases of the general class to which the particular proceedings belong," *In re Marriage of Dorman,* 198 Ariz. 298, 301, ¶ 7, 9 P.3d 329, 332 (App. 2000) (quoting *Estes v. Superior Court,* 137 Ariz. 515, 517, 672 P.2d 180, 182 (1983)) (internal quotation marks omitted), and is conferred by our constitution or statutes, *State v. Maldonado,* 223 Ariz. 309, 311, ¶ 14, 223 P.3d 653, 655 (2010). Subject matter jurisdiction cannot be vested in a court solely by waiver or estoppel. *Guminski v. Ariz. State Veterinary Med. Examining Bd.,* 201 Ariz. 180, 184, ¶ 18, 33 P.3d 514, 518 (App. 2001).

**¶13**          Disputes involving whether a contract is enforceable or breached, even when one party is a utility, is left to the exclusive jurisdiction of Arizona courts. *See* Ariz. Const. art. 6, § 1; *General Cable Corp. v. Citizens Utilities Co.*, 27 Ariz. App. 381, 386, 555 P.2d 350, 355 (1976) ("We agree with the trial court that the construction and interpretation to be given to legal rights under a contract reside solely with the courts . . . ."); *see, e.g., Nelson v. Rice*, 198 Ariz. 563, 567, ¶ 13, 12 P.3d 238, 242 (App. 2000) (noting that the trial court has to determine whether a contract is unconscionable as a matter of law). In fact, more than fifty years ago our supreme court stated that: "No judicial power is vested in or can be exercised by the corporation commission unless that power is expressly granted by the constitution." *Trico Elec. Coop. v. Ralston*, 67 Ariz. 358, 363, 196 P.2d 470, 473 (1948). And although the ACC has broad jurisdiction over "public service corporations" pursuant to Article 15 of the Arizona Constitution, the provision does not give the ACC jurisdiction to entertain and resolve contract claims. *See Trico*, 67 Ariz. at 362-65, 196 P.2d at 472-74 (comparing Arizona Constitution Article 15 to Article 6, and concluding that the Constitution vested no jurisdiction in the ACC to construe contracts and determine their validity); *see, e.g., Ariz. Corp. Comm'n v. Tucson Gas, Elec. Light & Power Co.*, 67 Ariz. 12, 189 P.2d 907 (1948).

**¶14**          Utility/Oasis, however, contends that the ACC has exclusive jurisdiction in this case because SFG's contract claim is not based on an enforceable contract. We disagree. This is not a case about setting water rates. Instead, Utility elected to sue SFG in the Maricopa County Superior Court for breach of contract and related legal theories for failing to pay its water bill, including the water that SFG received while it provided management services at the Oasis golf course. The fact that Utility/Oasis was unsuccessful given the totality of the evidence, does not wrest subject matter jurisdiction from the court.

**¶15**          Moreover, even though one of SFG's claims against Utility involved whether Utility had billed SFG, its customer, above the rates

approved by the ACC, the court had subject matter jurisdiction to resolve the contract dispute. *See Sommer v. Mountain States Tel. & Tel. Co.*, 21 Ariz. App. 385, 387-88, 519 P.2d 874, 876-77 (1974). Therefore, the superior court had subject matter jurisdiction to resolve the dispute between Utility and its customer. *See Trico*, 67 Ariz. at 365, 196 P.2d at 474; *see also General Cable*, 27 Ariz. App. at 386, 555 P.2d at 355 (concluding that the ACC cannot construe and interpret the parties' rights under a contract, even if that contract had been specifically approved by the ACC).

¶16        Utility/Oasis also contends the jury had to decide water utility policy, even though the ACC has sole and exclusive jurisdiction. We disagree with the argument.

¶17        Neither jury in either trial was asked to decide water utility regulation policy. Instead, the jury in the second trial had to decide whether SFG or Utility breached any contracts and, if so, to decide damages. Because the jury was not asked to resolve water utility regulation policy or rates, and did not, the superior court was not divested of subject matter jurisdiction over this lawsuit.

### B.        Breach of Tariff Contract Claim

¶18        Utility/Oasis next asserts that the superior court erred in denying its motion for directed verdict[10] at the close of both trials, and in denying its Rule 50(b) post-judgment motion for judgment as a matter of law after the second trial. Utility/Oasis asserts that SFG failed to present any evidence to support its breach of tariff contract claim.

¶19        We review the court's ruling on a motion for directed verdict and a motion for judgment as a matter of law de novo. *Felder v. Physiotherapy Assocs.*, 215 Ariz. 154, 162, ¶ 36, 158 P.3d 877, 885 (App. 2007); *Warne Invs., Ltd. v. Higgins*, 219 Ariz. 186, 194, ¶ 33, 195 P.3d 645, 653 (App. 2008). We will affirm the ruling unless, like a motion for summary judgment, "the facts produced in support of the claim or defense have so little probative value, given the quantum of evidence required, that reasonable people could not agree with the conclusion advanced by the

---

[10] Utility/Oasis did not provide the transcript from the first trial. As a result, we presume that the record would support the court's ruling. *Baker v. Baker*, 183 Ariz. 70, 73, 900 P.2d 764, 767 (App. 1995). Consequently, the superior court did not err by denying the motion for directed verdict in the first trial. *See id.*

proponent of the claim or defense." *Orme Sch. v. Reeves*, 166 Ariz. 301, 309, 802 P.2d 1000, 1008 (1990); *see* Ariz. R. Civ. P. 50(a).

**¶20** To prevail on its breach of contract claim, SFG was required to prove it had a contract with Utility, Utility breached the contract, and SFG suffered resulting damages. *See Goodman v. Physical Res. Eng'g, Inc.*, 229 Ariz. 25, 28, ¶ 7, 270 P.3d 852, 855 (App. 2011). Utility does not dispute the existence of a contract – it provided irrigation water to SFG for a fee. Instead, Utility argues that SFG claimed that it had a right to effluent for its irrigation water, but failed to prove a contractual right to effluent instead of CAP water. The record belies the focus of the argument.

**¶21** SFG presented evidence to the jury that Utility breached its tariff contract by: (1) overcharging SFG for deliveries of both CAP water and effluent; (2) withholding effluent; (3) improperly charging for minimum bills; (4) over-delivering irrigation water resulting in flooding of the golf course; (5) manufacturing bills; (6) using a manufactured account balance as a pretext to discontinue service; (7) failing to follow Arizona Administrative code regulations; and (8) not providing appropriate credits for overcharges. And citing to A.R.S. § 47-2306(B), SFG also claimed that Utility breached its contracts by failing to use its best efforts to deliver effluent to SFG.

**¶22** Because the water rates that Utility can charge its customers for CAP water and effluent are set by the ACC, the approved tariffs constitute an enforceable contract between Utility and its customer, SFG. *See Sommer*, 21 Ariz. App. at 387-88, 519 P.2d at 876-77. SFG presented evidence that Utility breached the contract. SFG also presented evidence that it was damaged as a result of Utility's breach and the amount of those damages, including the amount SFG overpaid between November 2006 and December 2007.

**¶23** The jury heard the testimony. The jury had to determine the credibility of the witnesses, evaluate the exhibits and determine the facts in reaching its verdict. *See Logerquist v. McVey*, 196 Ariz. 470, 488, ¶ 52, 1 P.3d 113, 131 (2000). The jury fulfilled its role, found that Utility had breached the tariff rates, and awarded SFG $41,883.11 in damages. Because substantial evidence supported the jury's breach of tariff contract verdict, we find no error.

### C.     Quantum Meruit Claim

¶24          Utility/Oasis argues that the superior court erred in the first trial by submitting SFG's quantum meruit claim to the jury because the claim was based on an illegal contract.  We disagree.

¶25          "Quantum meruit" is the measure of damages imposed when a party prevails on the equitable claim of unjust enrichment. *W. Corr. Grp., Inc. v. Tierney*, 208 Ariz. 583, 590, ¶ 27, 96 P.3d 1070, 1077 (App. 2004) (citing *Landi v. Arkules,* 172 Ariz. 126, 135, 835 P.2d 458, 467 (App. 1992)).  To recover quantum meruit damages, a plaintiff must prove "the defendant received a benefit, that by receipt of that benefit the defendant was unjustly enriched at the plaintiff's expense, and that the circumstances were such that in good conscience the defendant should provide compensation." *Freeman v. Sorchych*, 226 Ariz. 242, 251, ¶ 27, 245 P.3d 927, 936 (App. 2011).

¶26          Utility/Oasis contends, however, that SFG cannot recover damages under its quantum meruit theory because the court found the Oasis Agreement to be unenforceable and against public policy.  Although the agreement was unenforceable, quantum meruit damages can be awarded when one party has performed in return for a promise that turns out to be unenforceable on public policy grounds.  *See Blue Ridge Sewer Improvement Dist. v. Lowry and Assocs., Inc.*, 149 Ariz. 373, 375, 718 P.2d 1026, 1028 (App. 1986) (noting that a plaintiff may recover under quantum meruit despite the possible illegality of the underlying contract); *Pelletier v. Johnson,* 188 Ariz. 478, 937 P.2d 668 (App. 1996) (allowing a seller to recover on a quantum meruit claim against the buyer even though the contract was illegal under Arizona law); *see also* Restatement (Second) of Contracts § 198 cmt. b (1981) (claimant entitled to restitution for performance under a contract determined to be against public policy where "the public policy is intended to protect persons of the class to which he belongs and, as a member of that protected class, he is regarded as less culpable."); *see also* Restatement (Third) of Restitution and Unjust Enrichment § 32 (2011).

¶27          Here, SFG provided golf course management services for six months to Oasis pursuant to an agreement made between SFG and Johnson, the owner of Oasis and Utility.  Johnson, on behalf of Utility, agreed that Utility would provide water credits to SFG in exchange for SFG's management services.  The superior court found the Oasis Agreement unenforceable and against public policy because "[a] public utility must treat all customers without discrimination."  The court, as a result, dismissed SFG's breach of Oasis Agreement claim, but allowed the jury to decide whether SFG was entitled to damages under its quantum meruit

claim. Because there were facts supporting the equitable quantum meruit claim and damages, the court did not err by allowing the jury to decide whether SFG was entitled to quantum meruit damages despite the illegality of the Oasis Agreement.

¶28 Utility/Oasis also claims the superior court erred in denying its request in the first trial for a non-uniform quantum meruit jury instruction. We review de novo whether jury instructions correctly state the law. *State v. Torres*, 233 Ariz. 479, 481, 314 P.3d 825, 827 (App. 2013). We review jury instructions as a whole to determine whether the jury was properly guided in its deliberations. *See Terry v. Gaslight Square Assocs.*, 182 Ariz. 365, 368, 897 P.2d 667, 670 (App. 1994).

¶29 During the first trial, Utility/Oasis requested the following non-uniform jury instructions:

> A party may not recover on an unjust enrichment claim where the claimed amount is simply the amount allegedly due on a contract.

> Where a contract is alleged, a party has no claim for unjust enrichment.

> An innocent party to an illegal contract may only seek restitution under the contract if a public interest is not threatened.

The court rejected the requested instruction, and gave the following:

**Quantum Meruit**[11]

> Swing First is entitled to recover the reasonable value of the services rendered to Oasis unless you find that either one of two things was true in this case:

> First, Swing First is not entitled to recover for his services if it was understood by Swing First and Oasis that the services were being rendered free of charge. It is Oasis' burden to show that the parties had such an understanding.

---

[11] This is the Revised Arizona Jury Instruction for Quantum Meruit. *See* Rev. Ariz. Jury Instr. (Civil) Contract 24 (5th ed. 2013).

> Second, Swing First may not recover for his services if you find that, under all the circumstances, it was not unfair for Oasis to receive the benefit of Swing First's services without paying for them.
>
> Unless you find that Swing First and Oasis understood that the services were being rendered free of charge, or that under all the circumstances it was not unfair for Oasis to receive the benefit of those services without paying for them, you should award Swing First the reasonable value of the services. In determining what the reasonable value of Swing First's services was, you may consider the nature of the services provided and the customary rate of pay for such services.

The instruction the court gave was not a misstatement of the law but reflected the current state of the law. And viewing the instruction with the other instructions in this case, the jury was not misled by the instruction and, as a result, we find no error. *See Blue Ridge*, 149 Ariz. at 375, 718 P.2d at 1028.

¶**30**      Utility/Oasis's last challenge to the quantum meruit verdict is based on *In re Estate of Newman*, and Utility/Oasis contends that the claim should have been decided by the judge rather than the jury because it is purely an equitable claim. 219 Ariz. 260, 274, ¶ 55, 196 P.2d 863, 877 (App. 2008). In *Newman*, a probate matter, we stated that there is no constitutional right to a jury trial for equitable claims, including breach of fiduciary duty relating to a trustee's duties in probate proceedings. *Id.* at 273-74, ¶¶ 53, 57, 196 P.3d at 876-77; *see Henry v. Mayer*, 6 Ariz. 103, 114, 53 P. 590, 593 (Ariz. Terr. 1898) ("[T]he cause being one of equitable jurisdiction, the court below was not bound to submit any issue of fact to a jury[.]"). This case, however, is not a probate action. Instead, it was a contract and tort dispute that was whittled down to just the equitable claim against Oasis after the verdicts in the first trial and the court's grant of the motion for new trial. Moreover, Arizona Rule of Civil Procedure 39(m) provides:

> In all actions not triable of right by a jury the court upon motion or of its own initiative may try any issue with an advisory jury or, the court, with the consent of both parties, may order a trial with a jury whose verdict has the same effect as if trial by jury had been a matter of right.

And "even in equity cases, where a jury has been demanded, the court may not withdraw the case from the jury's consideration if there are

11

controverted issues of fact." *Jones v. CPR Div., Upjohn Co.*, 120 Ariz. 147, 150, 584 P.2d 611, 614 (App. 1978) (internal citation and quotation marks omitted). Although the quantum meruit claim is an equitable claim, the jury had to resolve diverse factual questions to determine if SFG was entitled to any damages under the theory. *See id.* Consequently, the court properly allowed the jury to decide the issue after properly instructing the jury; we find no error.

### D.    Evidentiary Rulings

¶31    Utility/Oasis asserts that the court's erroneous evidentiary rulings in both trials prejudiced Utility/Oasis and precluded a fair trial. We will not disturb the trial court's rulings regarding the exclusion or admission of evidence unless there is a clear abuse of discretion and prejudice results. *Larsen v. Decker*, 196 Ariz. 239, 241, ¶ 6, 995 P.2d 281, 283 (App. 2000) (citations omitted).

¶32    First, Utility/Oasis argues that the court erred in admitting the unsigned Oasis Agreement in the first trial because it was an illegal contract. As discussed in ¶ 26, *supra*, Arizona law allows the remedy of quantum meruit for an innocent party who has provided benefits under an illegal contract. *See* Restatement (Third) of Restitution and Unjust Enrichment § 32 (1981); *Blue Ridge*, 149 Ariz. at 375, 718 P.2d at 1028. The court did not abuse its discretion by admitting the Oasis Agreement. The agreement was relevant to show the meeting of the minds, the parties' understanding of the scope of work, and the expected cost for SFG's management services.

¶33    Utility/Oasis next contends that the admission of evidence relating to the management of the Oasis golf course in the second trial was prejudicial and precluded a fair trial. Although the Oasis Agreement was not directly relevant to the contract claims being litigated in the second trial, Utility asked Ashton questions about SFG's payment history. On redirect, the court allowed Ashton to testify to a limited extent and explain why SFG did not make payments on its water accounts during the time it provided management services to Oasis. *See Elia v. Pifer*, 194 Ariz. 74, 79, 977 P.2d 796, 801 (App. 1998) ("[A] party will not be allowed to complain of the introduction of irrelevant evidence where he has asserted a position that makes such evidence relevant.") (citing Morris K. Udall et. al, *Law of Evidence* § 11, at 11 (3d ed. 1991)).

¶34    Moreover, the court instructed the jury before the final jury instructions to disregard any testimony about the alleged Oasis Agreement

involving SFG and the management of another golf course because it had no bearing on the issues in the case. Therefore, even if Utility had not opened the door to allow Ashton's redirect testimony, the court's limiting instruction cured any potential error. *See Jimenez v. Starkey,* 85 Ariz. 194, 196, 335 P.2d 83, 84 (1959) (when superior court properly instructs jury, an appellate court "must presume that the jury obeyed such instructions"); *Hyatt Regency Phoenix Hotel Co. v. Winston & Strawn,* 184 Ariz. 120, 140, 907 P.2d 506, 526 (App. 1995) ("We must assume on review that the jury followed the instructions of the trial court.").

¶35        Utility also contends the court erred in allowing the jury to hear testimony about the Utility Services Agreement. During Ashton's testimony in the second trial, a juror submitted the following question:

> Was there ever anything in writing, such as a contract, that says you were only to get effluent from Johnson Utilities?

Utility objected to be question because the Utility Services Agreement had been determined to be an illegal contract in the first trial and any affirmative answer would "completely open[] up the door to lots of issues that have been thrown out already in this case." The objection was overruled, and Ashton answered "Yes, there was." Utility/Oasis argues that Ashton's answer caused it substantial prejudice and affected the jury's verdict. We disagree. Both parties were given the opportunity to ask Ashton any follow-up questions to clarify his answer to the question. Moreover, the court, as noted in ¶ 34, *supra,* gave a limiting instruction telling the jury to "disregard any testimony regarding any other golf course in reaching your decision in this case." Finally, neither party mentioned the Utility Services Agreement in closing arguments. Consequently, given the answer to the one question and the limiting instruction, the court did not err by allowing Ashton to answer the juror's question.

¶36        Finally, Utility/Oasis argues that the court abused its discretion by refusing to admit additional attachments to a letter Brian Tompsett, Utility's Executive Vice President, sent to Ashton (Exhibit 8). Utility/Oasis, however, does not cite to any legal authority supporting its argument.

¶37        During the first trial, Utility offered Exhibit 22 that had the Tompsett letter as well as additional attachments, and it was admitted. In the second trial, SFG offered Exhibit 8, which included the Tompsett letter, but omitted 83 pages of the attached invoices from Exhibit 22. Utility argued that Exhibit 8 was incomplete and moved to admit the 83 pages of

additional attachments to the Tompsett letter.[12] SFG objected because the 83-page document had not been disclosed nor provided before trial, and the court sustained the objection. Because the trial court is the gate-keeper to ensure that exhibits have been disclosed, *see* Arizona Rule of Civil Procedure 26.1, *see, e.g., Lohmeier v. Hammer*, 214 Ariz. 57, 66, ¶ 32, 148 P.3d 101, 110 (App. 2006) (noting a trial court must serve as an evidentiary gatekeeper), the court did not abuse its discretion by admitting Exhibit 8 and precluding Utility's undisclosed additional attachments.

### E. Prejudgment Interest

**¶38** Utility/Oasis claims that the court erred by awarding SFG prejudgment interest on its quantum meruit claim. Whether a party is entitled to prejudgment interest is a question of law we review de novo. *Berry v. 352 E. Virginia, L.L.C.*, 228 Ariz. 9, 13, ¶ 18, 261 P.3d 784, 788 (App. 2011); *Alta Vista Plaza, Ltd. v. Insulation Specialists Co.*, 186 Ariz. 81, 82, 919 P.2d 176, 177 (App. 1995).

**¶39** Oasis asserts that SFG was not entitled to prejudgment interest on its quantum meruit claim because the claim was not liquidated. Prejudgment interest is awarded as a matter of right on a liquidated claim. *Alta Vista*, 186 Ariz. at 82-83, 919 P.2d at 177-78. A claim is liquidated if there is credible data from which a precise amount of damages can be calculated without reliance on opinion or discretion. *Id.; see also John C. Lincoln Hosp. & Health Corp. v. Maricopa Cnty.*, 208 Ariz. 532, 544, ¶ 39, 96 P.3d 530, 542 (App. 2004) ("A claim is liquidated if the plaintiff provides a basis for precisely calculating the amounts owed.").

**¶40** Here, the court awarded prejudgment interest on SFG's quantum meruit damages from November 1, 2006, the date SFG resigned from managing Oasis, to the date of the judgment. The record establishes that the reasonable value of the management services SFG provided to Oasis was ascertainable by accepted standards of valuation and the jury determined the value of those services. SFG managed the Oasis golf course for six months according to the terms of the Oasis Agreement. And the agreement provided that Utility would provide to SFG as payment for its services water credits to 150 million gallons of irrigation per year. Although that agreement was unenforceable, it was some evidence of the value SFG was to receive for its management services. Given the agreement, the value of the management services were ascertainable by reasonable calculation

---

[12] The additional attachments were marked as Exhibit 42. The exhibit is not contained in the record on appeal.

after SFG resigned, and as the jury determined after reviewing the agreement and relevant exhibits. Accordingly, the court did not err by awarding SFG prejudgment interest on the value of its management services from the date it resigned. *See Alta Vista*, 186 Ariz. at 82-83, 919 P.2d at 177-78.

### F.      Attorneys' Fees

**¶41**        Utility/Oasis contends that the court erred by awarding SFG its attorneys' fees. We review the award, including the amount, for an abuse of discretion. *Assyia v. State Farm Mut. Auto. Ins. Co.*, 229 Ariz. 216, 222, ¶ 25, 273 P.3d 668, 674 (App. 2012). We consider whether "a judicial mind, in view of the law and circumstances, could have made the ruling without exceeding the bounds of reason." *Associated Indem. Corp. v. Warner*, 143 Ariz. 567, 571, 694 P.2d 1181, 1185 (1985) (citation omitted). But, the application of A.R.S. § 12-341.01(A) is a question of law we review de novo. *Nolan v. Starlight Pines Homeowners Ass'n*, 216 Ariz. 482, 490, 167 P.3d 1277, 1285 (App. 2007).

**¶42**        After two trials, Utility did not prevail on its lawsuit, but SFG was awarded damages against Utility/Oasis for quantum meruit and breach of the tariff contract; the total exceeding $95,000. In ruling on competing requests for attorneys' fees, the court denied Utility's request, found that SFG was the prevailing party and, after deducting the fees associated with the non-contract claims and unsuccessful claims, awarded SFG $300,737.25 in attorneys' fees.

**¶43**        Utility/Oasis asserts that the court erred by awarding SFG fees for the breach of tariff contract and quantum meruit because those claims were not "actions arising under contract." *See* A.R.S. § 12-341.01(A) ("In any contested action arising out of a contract, express or implied, the court may award the successful party reasonable attorney fees."). We disagree. As discussed above in ¶ 15, *supra,* SFG's breach of tariff contract counterclaim arose because it was a customer of Utility and Utility unlawfully billed it above the rates set by the ACC for CAP water and effluent. *See Sommer*, 21 Ariz. App. at 387-88, 519 P.2d at 876-77. Moreover, a party prevailing on a quantum meruit claim may recover attorneys' fees under A.R.S. § 12-341.01(A). *See Pelletier*, 188 Ariz. at 482-83, 937 P.2d at 672-73. Therefore, the court did not abuse its discretion by awarding SFG its attorneys' fees associated with the two claims under A.R.S. § 12-341.01(A).

¶44          Utility also challenges the court's decision that SFG was the "successful party," and therefore eligible for an award of fees pursuant to A.R.S. § 12-341.01.  Determining the "successful" party for the purposes of attorneys' fees is within the trial court's discretion and "will not be disturbed on appeal if any reasonable basis exists for it."  *Vortex Corp. v. Denkewicz*, 235 Ariz. 551, 562, ¶ 39, 334 P.3d 734, 745 (App. 2014) (internal citation and quotation marks omitted); *see also Assyia*, 229 Ariz. at 223, 273 P.3d at 675 ("[T]he trial court has substantial discretion to determine who is a 'successful party.'") (internal citation omitted).  Here, SFG was the "successful party" because it prevailed and received a monetary judgment and Utility/Oasis did not.  *See Berry*, 228 Ariz. at 14, ¶ 24, 261 P.3d at 789 (finding that buyer was the successful party because it received a monetary judgment); *see also Ocean W. Contractors, Inc. v. Halec Constr. Co.*, 123 Ariz. 470, 473, 600 P.2d 1102, 1105 (1979) (monetary award not dispositive but "an important item to consider when deciding who, in fact, did prevail").  Although it did not prevail on all of its counterclaims or claims that were tried, SFG prevailed more than Utility/Oasis and the court did not abuse its discretion by finding that SFG was the successful party.

¶45          Finally, Utility/Oasis argues that the court abused its discretion by awarding SFG attorneys' fees because (1) SFG did not provide sufficient detail to determine the reasonableness of the fees sought, and (2) the fees were excessive.  SFG's fee affidavit, as required, disclosed "the type of legal services provided, the date the service was provided, the attorney providing the service . . . and the time spent in providing the service."  *See Schweiger v. China Doll Rest., Inc.*, 138 Ariz. 183, 188, 673 P.2d 927, 932 (App. 1983).  The fee affidavit also provided "sufficient detail to enable the court to assess the reasonableness of the time incurred."  *See id.*

¶46          Once a party establishes entitlement to fees and meets the minimum requirements in an application and affidavit, as SFG did here, the burden shifts to the party opposing the fee award to demonstrate the impropriety or unreasonableness of the requested fees.  *Assyia*, 229 Ariz. at 223, ¶ 29, 273 P.3d at 675.  The argument that $400 was an unreasonable hourly rate because SFG's counsel, Craig Marks, lacked sufficient litigation experience is not persuasive.  *See State ex rel. Corbin v. Tocco,* 173 Ariz. 587, 594, 845 P.2d 513, 520 (App. 1992) (citing *State v. Maricopa Cnty. Med. Soc'y,* 578 F. Supp. 1262, 1264 (D. Ariz. 1984)) (opposing party cannot simply claim that the rates submitted are "too high").  SFG supported its fee request with an affidavit from counsel that documented Mr. Marks' experience and credentials, including more than 30 years' experience in utility law.  SFG was entitled to retain competent, experienced counsel to represent it, and a commensurate hourly rate was not unreasonable.  *See Assyia*, 229 Ariz. at

223, ¶ 30, 273 P.3d at 675. Therefore, finding no error, we affirm the court's award of SFG's attorneys' fees.

## II.    SFG'S CROSS-APPEAL

**¶47**        In its cross-appeal, SFG argues that the trial court erred in granting Utility's motion for summary judgment and dismissing SFG's claim that Utility tortiously breached the covenant of good faith and fair dealing. SFG seeks to reverse the court's ruling, and remand the claim for a jury trial. For the following reasons, we affirm.

**¶48**        SFG, as part of its claims against Utility, asserted a claim for breach of good faith and fair dealing as it related to Utility's alleged breach of contract. Specifically, SFG argued that Utility breached its duty of good faith by failing to make payment under the Oasis Agreement and by failing to abide by the ACC-mandated tariffs in providing water service. Utility moved for summary judgment, which included SFG's bad faith claim, the court granted the motion in part and dismissed the claim.[13] SFG filed a motion for reconsideration, which the court denied.

**¶49**        We review the grant of summary judgment de novo to determine "whether there are any genuine issues of material fact" and to determine whether the movant is entitled to judgment as a matter of law. *Unique Equip. Co. v. TRW Vehicle Safety Sys., Inc.*, 197 Ariz. 50, 52, ¶ 5, 3 P.3d 970, 972 (App. 1999). If "the evidence or inferences would permit a jury to resolve a material issue in favor of either party, summary judgment is improper." *Comerica Bank v. Mahmoodi*, 224 Ariz. 289, 292, ¶ 19, 229 P.3d 1031, 1034 (App. 2010) (internal citation and quotation marks omitted). We view the facts and reasonable inferences in the light most favorable to the

---

[13] SFG argues that Utility's motion for summary judgment only requested that the court dismiss SFG's bad faith claim as to the Utility Services Agreement and the Oasis Agreement, but not as to the tariff contract. SFG contends, "the Court granted a motion that was not made and to which [SFG] did not respond." In its summary judgment motion, Utility claimed it was entitled to summary judgment on Count Six of SFG's First Amended Counterclaim, which alleged that Utility breached the covenant of good faith and fair dealing by breaching the terms of the Utility Service Agreement, the Oasis Agreement, and tariffs. The record, as a result, supports the court's ruling that the motion encompassed SFG's bad faith claim in its entirety.

party against whom judgment was entered. *Unique Equip. Co.*, 197 Ariz. at 52, ¶ 5, 3 P.3d at 972.

**¶50**    Tort damages for breach of the covenant of good faith and fair dealing are available only when there exists a "special relationship" between the parties, which is characterized by "'elements of public interest, adhesion, **and** fiduciary responsibility.'" *Rawlings v. Apodaca*, 151 Ariz. 149, 158, 726 P.2d 565, 574 (1986) (quoting *Seaman's Direct Buying Serv., Inc. v. Standard Oil Co. of Cal.*, 686 P.2d 1158, 1166 (Cal. 1984)) (emphasis added). Examples of the "special relationship" include the relationship between common carrier and passenger, innkeeper and guest, physician and patient, and attorney and client. *Rawlings*, 151 Ariz. at 159, 726 P.2d at 575. And as the superior court noted in its ruling, Arizona case law does not permit tort damages "based on the adhesive nature of the contract alone – the Supreme Court used 'and,' not 'or,' in listing the elements." *See id.* at 158, 726 P.2d at 574.

**¶51**    Here, SFG alleged the special relationship between the parties was based solely on the adhesive nature of the contract, and it did not allege any additional elements of public interest or fiduciary responsibility in its amended counterclaim. In its cross-appeal, SFG now argues that Utility's relationship with its customers is subject to the public interest and involved fiduciary elements. SFG did not raise the argument in response to the summary judgment motion, but only in its motion for reconsideration. The superior court did not reconsider its ruling, and we generally do not consider arguments raised for the first time in a motion for reconsideration. *See Evans Withycombe, Inc. v. W. Innovations, Inc.*, 215 Ariz. 237, 240, ¶ 15, 159 P.3d 547, 550 (App. 2006). Because we find no reason to consider an argument the court did not address, SFG failed to preserve its argument for appellate review.

## III.    ATTORNEYS' FEES AND COSTS ON APPEAL

**¶52**    Both parties have requested an award of attorneys' fees and costs upon appeal pursuant to A.R.S. § 12-341.01. Because Utility/Oasis has not prevailed, we deny the request. In the exercise of our discretion, we award SFG its reasonable attorneys' fees on appeal in an amount to be determined pursuant to A.R.S. § 12-341.01, as well as its costs on appeal upon compliance with Arizona Rule of Civil Appellate Procedure 21.

**CONCLUSION**

¶53     For the foregoing reasons, we affirm the court's judgment.



Ruth A. Willingham · Clerk of the Court
FILED: ama